No. 01-419

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 149

LAVERN SEAL, d/b/a NATIONAL AUCTION
& SALE MANAGEMENT,

        Plaintiff and Appellant,

    v.

TUT HART and JAN STEVENS,

        Defendants and Respondents.

FILED

JUL 02 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Thomas S. Winsor, Winsor Law Firm, PLLC, Helena, Montana

    For Respondents:

        Elizabeth J. Honaker, Honaker Law Firm, Billings, Montana
(For Respondent TUT Hart)

        Gregory G. Murphy, Moulton, Bellingham, Longo & Mather, P.C., Billings,
Montana (For Respondent Jan Stevens)

        Submitted on Briefs:  February 14, 2002

        Decided:  July 2, 2002

Filed:

_____
        Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Appellant LaVern Seal, doing business as National Auction and Sales Management, filed a complaint against Respondents Tut Hart and Jan Stevens in the Thirteenth Judicial District, Yellowstone County, which sought relief for breach of contract and breach of a duty to procure insurance. The District Court entered judgment against Hart in the amount of $40,000 but dismissed the claim against Stevens for lack of personal jurisdiction. Seal appeals that portion of the judgment which dismissed Stevens. We affirm in part and reverse in part the order of the District Court.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err when it concluded that it did not have personal jurisdiction over Stevens?

¶4 2. Did the District Court err when it concluded that no relationship existed between Seal and Stevens which would give rise to a duty on Stevens' part to procure insurance for Seal?

BACKGROUND

¶5 In March 1995, LaVern Seal, doing business as National Auction and Sales Management in Montana and Idaho, sold approximately 100 saddles and tack to Tut Hart for $53,315.86. Hart paid $13,315.86 as a down payment and agreed to remit the remainder following the goods' sale at a California auction. The transaction called for delivery of the goods to Hart in Billings, Montana. From Billings, Hart was to transport the goods to California for resale. Seal did not procure a lien or other security interest on the property.

2

However, before Seal would relinquish the merchandise, Hart was to obtain insurance on the goods to protect against casualty loss and theft.

¶6 Hart, a resident of South Dakota, contacted his South Dakota insurance agent about insuring the goods. The insurance agent, Jan Stevens, obtained and conveyed several insurance bids to Hart. Subsequently, Hart submitted an application for commercial motor vehicle liability insurance and motor truck cargo insurance to the Canal Insurance Company ("Canal"), which provides insurance for common carriers hauling cargo owned by others. The applications did not identify Seal as an additional insured or loss payee. However, Hart did list Seal as a certificate holder on the motor truck cargo application.

¶7 On April 24, 1995, Canal issued the policies to Hart as requested in the applications. As a condition to the transaction, Seal requested that Hart provide proof of the goods' insurance. Therefore, at Hart's request, Stevens faxed Seal a copy of the application for insurance and a certificate of insurance establishing that the goods were insured, subject to the conditions of the policies.

¶8 On the same day the policies were issued, Hart rented a Ryder truck in Billings and loaded it with the merchandise. Hart's driver departed from Billings and arrived in Downey, Idaho, on the evening of April 25, 1995. The following morning the driver phoned the local authorities to report the truck and cargo missing. The local sheriff's department located the truck but the cargo was never recovered.

¶9 Following the incident, Hart submitted a claim to Canal for coverage on the stolen merchandise. After an investigation, Canal denied Hart's claim on the grounds that (1) Hart

3

was not a "common carrier" and (2) Hart owned the property and, therefore, was not hauling the property of another. Consequently, Seal and Hart jointly filed a negligence and bad faith suit against Canal in the United States District Court for the District of Montana.

¶10 The United States District Court dismissed Hart from the action pursuant to Rule 37(b)(2)(C), Fed.R.Civ.P. Further, the Court concluded that Seal was not in privity of contract with Canal, was not a third-party beneficiary to the contract, and did not maintain an insurable interest in the property. Therefore, the Court held that Seal did not have standing to enforce the insurance contract against Canal and entered summary judgment accordingly. Neither Seal nor Hart appealed the Court's judgment.

¶11 On June 2, 1998, Seal filed a complaint in the present action against Hart and Stevens which sought relief for breach of contract and breach of a duty to procure insurance. Stevens subsequently filed a motion to dismiss for lack of personal jurisdiction. The District Court denied Stevens' motion based on Seal's representation that he spoke with Stevens and requested that he be listed as the loss payee on the insurance policies.

¶12 On March 9, 2001, the case proceeded to a non-jury trial. Following trial, on March 16, 2001, Hart moved the District Court to amend the pleadings to include a cross-claim against Stevens for breach of contract and professional negligence in order to conform the pleadings to the evidence presented, without objection, at trial. On March 29, 2001, the District Court issued its findings of fact, conclusions of law, and order. The District Court: (1) dismissed Seal's claim against Stevens, with prejudice, for lack of personal jurisdiction; (2) denied Hart's motion to amend the pleadings and dismissed "Hart's purported cross-claim

4

against Ms. Stevens . . . with prejudice based on the Court's lack of personal jurisdiction over Ms. Stevens;" and (3) entered judgment for Seal against Hart in the amount of $40,000, plus interest. Seal appeals that portion of the District Court's order which dismissed his cause of action against Stevens.[1]

## STANDARD OF REVIEW

¶13 We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Kovarik v. Kovarik*, 1998 MT 33, ¶ 20, 287 Mont. 350, ¶ 20, 954 P.2d 1147, ¶ 20. A district court's determination that it lacks jurisdiction is a conclusion of law which we review to determine whether the court's interpretation of the law is correct. *Threlkeld v. Colorado*, 2000 MT 369, ¶ 7, 303 Mont. 432, ¶ 7, 16 P.3d 359, ¶ 7.

## DISCUSSION

## ISSUE ONE

¶14 Did the District Court err when it concluded that it did not have personal jurisdiction over Stevens?

---

[1] Seal's appeal does not challenge that portion of the judgment which pertains to Hart. Further, Hart did not file a notice of appeal from the judgment rendered against him. Nevertheless, Hart filed a response brief in the instant appeal. Consequently, as he is not a party to this appeal, we will not consider those arguments presented by Hart.

¶15 Seal argues that the "[t]estimony showed that Stevens was aware that the cargo to be insured originated in Montana, and that she sent two faxes to Seal at his Billings, Montana office." Seal contends that this contact was sufficient to exercise general personal jurisdiction over Stevens. Alternatively, Seal insists that Stevens contracted to insure property located in Montana at the time of contracting. Therefore, pursuant to Rule 4B(1)(d), M.R.Civ.P., Seal maintains that the District Court had specific personal jurisdiction over Stevens.

¶16 This Court applies a two-part test to determine whether a Montana court can exercise personal jurisdiction over a nonresident defendant. First, we determine whether personal jurisdiction exists pursuant to Rule 4B(1), M.R.Civ.P. *Threlkeld*, ¶ 9. Second, we determine whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the due process clause. *Bird v. Hiller* (1995), 270 Mont. 467, 470, 892 P.2d 931, 933.

¶17 Rule 4B(1), M.R.Civ.P., incorporates the principles of both general and specific jurisdiction. Montana courts can exercise general jurisdiction over "[a]ll persons found within the state of Montana . . . ." Rule 4B(1), M.R.Civ.P. In *Simmons Oil Corp. v. Holly Corp.* (1990), 244 Mont. 75, 83, 796 P.2d 189, 194, we stated:

> A party is "found within" the state if he or she is physically present in the state or if his or her contacts with the state are so pervasive that he or she may be deemed to be physically present there. A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum.

¶18 Conversely, even though a defendant maintains minimal contacts with the forum, Montana courts may exercise specific long-arm jurisdiction over that defendant if the plaintiff's cause of action arises from any of the activities enumerated in Rule 4B(1), M.R.Civ.P., and the exercise of jurisdiction does not offend due process. *Bird*, 270 Mont. at 471, 892 P.2d at 933. Seal relies on the following language in Rule 4B(1), M.R.Civ.P., to establish specific personal jurisdiction:

> [A]ny person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> . . . .
>
> (d) contracting to insure any person, property or risk located within this state at the time of contracting;

It appears that Seal argued in favor of general and specific jurisdiction before the District Court. On appeal, he offers somewhat vague allusions to each. Therefore, we will address each contention in turn.

¶19 Prior to ruling on Seal's specific jurisdiction argument, the District Court concluded that it did not have general jurisdiction over Stevens. The District Court arrived at this conclusion based on the uncontroverted evidence that Stevens: is a resident of South Dakota; is a licensed insurance agent in South Dakota and Iowa, not in Montana; has not sold insurance in Montana or solicited business from a Montana citizen; has never advertised in Montana or been listed in a Montana telephone book; has never maintained an office in Montana; has never employed anyone in Montana; and has never owned property in

Montana. The evidence indicated that Stevens' only contact with Montana, for purposes of general jurisdiction, occurred during the unsolicited communications with Hart and the facsimile communication with Seal. These nominal associations are not sufficient to rise to the level of "substantial" or "continuous and systematic" contacts as required to establish general jurisdiction. As such, we hold that the District Court correctly concluded that it did not have general jurisdiction over Stevens. We now turn our attention to specific jurisdiction.

¶20 Seal contends that his cause of action against Stevens arises out of her contracting to insure the saddles and tack, which remained in Montana during the contracting. Therefore, Seal insists that the District Court had specific personal jurisdiction over Stevens pursuant to Rule 4B(1)(d), M.R.Civ.P. Stevens states that "Seal cites to no authority for the proposition that M.R.Civ.P. 4B(1)(d) was meant to apply to an insurance agent." Therefore, Stevens suggests that Rule 4B(1)(d), M.R.Civ.P., applies only to insurance companies, not to insurance agents.

¶21 Admittedly, our research has not revealed extensive authority on Stevens' proposition. However, those courts which have addressed this issue have held that similar long-arm jurisdictional provisions apply to insurance agents as well as the insurance companies. In *Dillon Equities v. Palmer & Cay, Inc.* (Ala. 1986), 501 So.2d 459, 462, the Alabama Supreme Court held that Alabama courts could exercise personal jurisdiction over an out-of-state insurance agent pursuant to its long-arm jurisdiction provision, which is virtually identical to Rule 4B(1)(d), M.R.Civ.P. Similarly, in *Cornell & Co. v. Home Ins. Cos.*

8

(E.D.Pa. 1995), 1995 WL 46618, 3, in contemplating whether Pennsylvania courts could exercise personal jurisdiction over an out-of-state insurance broker, the United States District Court concluded: "It follows that since [the insurance broker] was supposed to obtain insurance for 'property or risk located within th[e] Commonwealth at the time of contracting,' jurisdiction can properly be maintained . . . ." We agree with the conclusions reached by these courts and, having found no authority to the contrary, hold that Rule 4B(1)(d), M.R.Civ.P., applies to insurance agents as well as insurance companies. We will now proceed to examine whether Rule 4B(1)(d), M.R.Civ.P., applies to the case at bar.

¶22    In analyzing whether it maintained specific personal jurisdiction over Stevens, pursuant to Rule 4B(1)(d), M.R.Civ.P., the District Court concluded:

> 11. Mr. Seal was not shown as a loss payee either on the application for insurance signed by Mr. Hart or on the Certificate of Insurance sent by Ms. Stevens to Mr. Seal. Ms. Stevens did not act as an insurance agent for Mr. Seal and no relationship developed between the two of them that would give rise to a duty on her part to procure insurance for Mr. Seal. Therefore, Ms. Stevens did not contract with Mr. Seal to insure any person, property or risk located in Montana.
>
> 12. Mr. Seal failed to prove by a preponderance of the evidence the necessary relationship between him and Ms. Stevens that would give rise to the duties of an insurance agent to a client.
>
> . . . .
>
> 14. Mr. Seal failed to prove by a preponderance of the evidence that Ms. Stevens maintains minimal contacts with Montana as delineated by Rule 4B(1), M.R.Civ.P., to subject her to the jurisdiction of this Court. This Court does not have specific jurisdiction over Ms. Stevens.

¶23 Generally, a court should determine jurisdiction only on the necessary jurisdictional facts and not on the merits of the case. *See* 21 C.J.S. *Courts* § 87 (1990). From what we can deduce, following a non-jury trial on the merits, the District Court rejected Seal's Rule 4B(1)(d), M.R.Civ.P., jurisdictional assertion because Stevens did not contract with Seal to insure property and, therefore, Stevens owed Seal no duty of care. However, Rule 4B(1)(d), M.R.Civ.P., does not require that a plaintiff establish the substantive elements of a contract or a duty of care before a court may exercise personal jurisdiction over a particular party. To assert personal jurisdiction over a prospective party, Rule 4B(1)(d), M.R.Civ.P., simply requires that the claim for relief arise out of the contracting to insure any person, property, or risk located within Montana at the time of contracting. "Arising from," within this context, has been defined as a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the act which falls within the long-arm statute. *See Glovegold Shipping v. Sveriges Angfartygs* (Fla. Dist. Ct. App. 2000), 791 So.2d 4, 10.

¶24 In his complaint, Seal alleged that Stevens had a contractual duty to insure the goods against loss or damage, Stevens breached her duty to procure the respective insurance, and he suffered a loss as a result of Stevens' breach. At their core, the allegations in the complaint derived from the alleged act. As to the alleged jurisdictional act, Stevens admitted the following at trial:

> Q: You also knew that the cargo that was to be covered by the policy was located in Billings, Montana, at Mr. Seal's warehouse at the time that the policy was written?
>
> A: Yes.

10

Therefore, for the foregoing reasons, we conclude that Seal's claim for relief arose out of Stevens' contracting to insure property located within Montana at the time of contracting.

¶25 The District Court should not have ventured into the duty arena for purposes of determining personal jurisdiction. Whether Stevens owed Seal a duty of care goes to the viability of his theory for recovery in the underlying action. To dismiss a claim for lack of personal jurisdiction on the grounds that one party did not owe the opposition a duty of care would compel an analysis of the claim's merits prior to the threshold jurisdictional inquiry.

¶26 Consequently, we hold that Stevens was subject to the jurisdiction of the courts of Montana pursuant to Rule 4B(1)(d), M.R.Civ.P., and the District Court erred when it concluded otherwise. Ordinarily, as alluded above, we would at this point have to determine whether exercising personal jurisdiction over Stevens would comport with the notions embodied in the due process clause. However, as the parties did not argue the due process issue before the District Court and have not raised it on appeal, we must proceed under the assumption that Rule 4B(1)(d), M.R.Civ.P., complies with the principles of due process. As such, we have simply been charged with determining whether Rule 4B(1)(d), M.R.Civ.P., applies to the facts of this case such that Montana courts can assert personal jurisdiction over Stevens. Therefore, we reverse that portion of the District Court's order which dismissed Seal's claim against Stevens for lack of personal jurisdiction.

¶27 Typically, in a case such as this where we reverse a district court's dismissal for lack of personal jurisdiction, we would remand the matter for further proceedings. However, the

11

District Court's judgment was not entered until after the non-jury trial, where each respective party had the opportunity to present their case in full. As part of the judgment, the District Court effectively addressed the merits of the case when it concluded that Stevens owed Seal no duty of care. As there is sufficient evidence in the record regarding the viability of Seal's substantive claim against Stevens, we need not remand the matter for further proceedings.

## ISSUE TWO

¶28 Did the District Court err when it concluded that no relationship existed between Seal and Stevens which would give rise to a duty on Stevens' part to procure insurance for Seal?

¶29 Seal's position regarding this issue on appeal is somewhat difficult to ascertain. Seal apparently maintains that Stevens knew of his interest in procuring insurance for the merchandise in question. Yet, according to Seal, Stevens failed to name him as the loss payee in the insurance contract. Further, according to Seal, the insurance policy that Stevens procured ultimately proved "worthless" as Hart was not a common carrier hauling the property of another, as required in the policy. Seal insists that Stevens "had a duty to provide ... insurance [on the cargo] for whatever reason Seal may have had to require the insurance." Therefore, Seal concludes that Stevens "failed in her duty to Seal, and that negligence caused Seal's loss."

¶30 It is important to note that Seal pursued this cause of action against Stevens under the theories of breach of contract and breach of the duty to procure insurance. Presumably, as a result of the adverse ruling in the United States District Court, Seal did not assert a claim for relief in the present action based on third-party beneficiary law. Further, Seal has never

12

alleged fraud, misrepresentation, or the like. Accordingly, as indicated above, the District Court concluded that Seal did not contract with Stevens to insure any person, property, or risk located in Montana. Since the District Court determined that no relationship existed between Seal and Stevens, it concluded that Stevens incurred no duty to procure insurance on Seal's behalf.

¶31 The question of duty is a problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other. *Larson-Murphy v. Steiner*, 2000 MT 334, ¶ 31, 303 Mont. 96, ¶ 31, 15 P.3d 1205, ¶ 31 (citation omitted). In other words, in order for Seal to prevail against Stevens, he had to establish some relationship between the parties which obliged Stevens to a particular standard of conduct.

¶32 In *Lu-An-Do, Inc. v. Kloots* (Ohio Ct. App. 1999), 721 N.E.2d 507, the Ohio Court of Appeals examined a case strikingly similar to the one at bar. There, the plaintiff negotiated the sale of his restaurant with a prospective buyer. The two entered into a purchase agreement with the stipulation that the buyer would secure and maintain insurance coverage on the building and the personal property contained therein as the plaintiff retained a mortgage interest in the real property and a security interest in the personal property. With the aid of an insurance agency, the buyer subsequently obtained a policy for the restaurant. The policy listed the plaintiff as a mortgagee for the real property but did not name him as a loss payee in the provisions covering the personal property. The plaintiff did receive a certificate of insurance but not a copy of the insurance policy itself. The plaintiff never contacted the insurance agency in regard to the insurance policy.

13

¶33 Approximately two years following the coverage's effective date, the restaurant sustained damage in a fire. The insurance company paid plaintiff's claim under the property insurance policy for his loss as a mortgagee but denied his personal property claim as he was not listed as a loss payee in the relevant personal property provisions. The plaintiff subsequently filed suit against the buyer, the insurance agency, an employee of the insurance agency, and the insurance company. The defendants filed a joint motion for summary judgment which the trial court granted on the grounds that the defendants owed no duty to the plaintiff.

¶34 On appeal, the Ohio Court of Appeals affirmed the trial court. The Court did so, in part, for the following reasons:

> This court finds that, as a matter of law, the issuance of a Certificate of Insurance to a certificate holder who is not the customer of the insurance agent issuing the certificate, fails to create a duty from the certificate issuer to the certificate holder.
>
> . . . .
>
> An insurance agency has a duty to exercise good faith and reasonable diligence in providing insurance requested by its customer. An insurance agent, however, owes no duty to ensure that a party is named as an insured on a policy when there was no oral or written agreement to obtain insurance coverage between the party and the agent and when the party never contacted the agent or any other insurance agent about procuring coverage. . . . [I]n this matter, [plaintiff] had no agreement with [the insurance agency] regarding the procurement of insurance coverage. Nor did [plaintiff] make a request of [the insurance agency] to be named as an insured or as an additional insured under the subject policy. The only conversations regarding insurance coverage took place between [the insurance agency] and [the buyer]. Moreover, any contract for the provision of insurance was between [the insurance agency] and [the buyer] . . . . [Citations omitted.]

14

*Lu-An-Do*, 721 N.E.2d at 510. We note that *Lu-An-Do* does continue to examine the plaintiff's cause of action pursuant to his misrepresentation claim and his third-party beneficiary status. However, as mentioned above, Seal did not allege misrepresentation or any theory invoking third-party beneficiary treatment in the present cause of action. As such we will not examine those issues.

¶35 The evidence at trial in this case presented a factual scenario comparable to that referenced above. At trial, Seal testified to the following:

Q. Have you ever met Jan Stevens?

A. No.

. . . .

Q. And she is not your agent, is she?

A. No.

. . . .

Q. [T]he conversation you had with Jan Stevens that you say you had was subsequent to the events that give rise to your claim; is that right?

A. When I didn't get paid, yes.

Q. But she never spoke with you in person or by telephone prior to the saddles and tack being loaded on the truck; is that right?

A. That's right.

Q. Did you ever present any application for insurance to her?

A. No.

Q. Did you ever request her assistance to obtain insurance?

15

A. No.

. . . .

Q. You never communicated to Jan Stevens that you wanted to be a loss payee on the insurance, did you?

A. Yes – well, no. I told that to Tut Hart.

. . . .

Q. But Jan Stevens wasn't part of the negotiations between you and Tut Hart, was she?

A. No.

Further, Stevens testified as follows:

Q. Have you ever spoken with LaVern Seal?

A. No.

Q. Are you quite certain of that?

A. Yes.

Q. Even after the loss was reported by Mr. Hart, Tut Hart, did Mr. Seal ever call you?

A. No.

. . . .

Q. Did you have any correspondence with Mr. Seal?

A. No. Other than faxing, by request of Tut, I faxed a certificate of insurance, I faxed some stuff to him.

Finally, Hart testified that he informed Stevens that Seal was to be listed as the loss payee on the insurance policy. However, Stevens denied receiving such a request.

16

¶36   Generally, a certificate of insurance is merely evidence of the existence of an insurance policy. 13A Appleman, *Insurance Law and Practice* § 7530 (1976 and Supp. 1997). A certificate of insurance alone does not constitute a contract to procure insurance or impose a duty upon the certificate issuer to procure the same. *See R.H. Grover, Inc. v. Flynn Ins. Co.* (1989), 238 Mont. 278, 284, 777 P.2d 338, 341. This principle was reaffirmed by the certificate itself. At trial, Seal acknowledged that the certificate read:

> This Certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below.

¶37   Moreover, as in *Lu-An-Do*, the testimony at trial in the instant case conclusively revealed that Seal never contacted Stevens about procuring insurance coverage on the merchandise. The only conversations regarding the procurement of insurance occurred between Hart and Stevens. While there was conflicting testimony regarding the request for the loss payee designation, we cannot conclude that the District Court misapprehended the effect of the evidence or made a mistake. As there is sufficient evidence in the record to support the District Court's findings, we hold that the District Court did not err when it concluded that no relationship existed between Seal and Stevens that would give rise to a corresponding duty. While it was not proper to dismiss the complaint against Stevens for lack of personal jurisdiction, the District Court would have been justified in dismissing the complaint, with prejudice, against Stevens on the grounds that no relationship existed between Seal and Stevens such that Seal could recover on his claim for relief.

17

¶38　Accordingly, the judgment of the District Court is affirmed in part, reversed in part, and remanded for entry of judgment consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices