WELLS FARGO BANK, N.A. (F/K/A NORWEST BANK MINNESOTA, NATIONAL ASSOCIATION) ACTING BY AND THROUGH ITS SPECIAL SERVICER CAPMARK FINANCE, INC. (f/k/a GMAC COMMERCIAL MORTGAGE CORPORATION), AS TRUSTEE FOR THE REGISTERED HOLDERS OF GMAC COMMERCIAL MORTGAGE SECURITIES, INC. MORTGAGE PASS-THROUGH CERTIFICATES SERIES 1999-C1, PLAINTIFF v. AFFILIATED FM INSURANCE COMPANY, KNAPP, SCHENCK & COMPANY INSURANCE AGENCY, INC., SEASONS CHASE, LLC, ALLIANCE HOLDINGS INVESTMENTS, LLC, AND MSC CAROLINA, LLC, DEFENDANTS

No. COA07-735

(Filed 7 October 2008)

## 1. Appeal and Error— appealability—adverse jurisdiction ruling

Although an appeal from the denial of a motion to dismiss is an appeal from an interlocutory order, the Court of Appeals has jurisdiction because an interested party has the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of defendant.

**WELLS FARGO BANK, N.A. v. AFFILIATED FM INS. CO.**

[193 N.C. App. 35 (2008)]

**2. Jurisdiction— personal jurisdiction—nonresident—long-arm statute—due process—findings of fact**

A determination of whether North Carolina courts have personal jurisdiction over a nonresident defendant involves a two-step analysis including that: (1) the transaction must fall within the language of the State's long-arm statute; and (2) the exercise of jurisdiction must not violate the due process clause of the Fourteenth Amendment to the United States Constitution. Although the determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact, defendant failed to assign error to the trial court's findings of fact, and thus, the trial court's finding are presumed to be correct with review limited to a determination of whether the findings of fact support the conclusions of law.

**3. Jurisdiction— personal jurisdiction—nonresident—long-arm statute—sufficiency of minimum contacts**

The trial court did not err in a declaratory judgment action by denying nonresident defendant insurance broker's N.C.G.S. § 1A-1, Rule 12(b)(2) motion to dismiss based on lack of personal jurisdiction an action alleging breach of an obligation to procure property insurance for the purpose of protecting property in North Carolina because: (1) defendant voluntarily assumed an obligation to obtain insurance on North Carolina real estate, thus constituting purposeful activity; (2) defendant provided Evidence of Property Insurance forms indicating that the North Carolina real estate was covered; (3) defendant received compensation for procuring the insurance; (4) plaintiff's claims against defendant arise out of defendant's conduct directed at North Carolina property, thus falling under the long arm statute of N.C.G.S. § 1-75.4(6); and (5) sufficient minimum contacts existed with this State to allow the assertion of personal jurisdiction consistent with due process.

Appeal by defendant from order entered 9 March 2007 by Judge Steve A. Balog in Guilford County Superior Court. Heard in the Court of Appeals 12 December 2007.

*Kilpatrick Stockton LLP, by James H. Kelly, Jr. and Laura A. Greer, for plaintiff-appellee.*

*Doughton & Hart PLLC, by Thomas J. Doughton and Amy L. Bossio, for defendant-appellant Knapp, Schenck & Company Insurance Agency, Inc.*

WELLS FARGO BANK, N.A. v. AFFILIATED FM INS. CO.

[193 N.C. App. 35 (2008)]

GEER, Judge.

Defendant Knapp, Schenck & Company Insurance Agency, Inc. ("Knapp Schenck") appeals from the denial of its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.[1] Knapp Schenck is an insurance broker that was responsible for procuring insurance on a piece of property located in North Carolina. Plaintiff alleges that Knapp Schenck misrepresented that the property was covered and negligently failed to provide the coverage that it represented existed. Plaintiff has presented evidence that Knapp Schenck (1) voluntarily assumed an obligation to obtain insurance on North Carolina real estate, (2) provided "Evidence of Property Insurance" forms indicating that the North Carolina real estate was covered, and (3) received compensation for procuring the insurance. Because of this evidence and because plaintiff's claims against Knapp Schenck arise out of Knapp Schenck's conduct directed at North Carolina property, we hold that N.C. Gen. Stat. § 1-75.4(6) (2007) provides long-arm jurisdiction. Further, sufficient minimum contacts exist with this State to allow the assertion of personal jurisdiction consistent with due process.

## Facts

On 25 November 1998, Seasons Group Limited Partnership executed a promissory note to Capmark Finance, Inc. for the purchase of the Ashley Creek Apartment Complex in Greensboro, North Carolina. Capmark, however, ultimately "endorsed, assigned, sold, transferred and delivered" its interest in the promissory note and deed of trust to Wells Fargo Bank, N.A. The deed of trust securing the note required that Seasons Group obtain insurance against loss and damage to the property. On 18 February 2000, Seasons Group assigned its obligations under the promissory note and deed of trust to defendant Seasons Chase, LLC. Seasons Chase's obligations were guaranteed by defendants Alliance Holdings Investments, LLC and MSC Carolina, LLC.

Knapp Schenck served as an insurance broker to obtain the required insurance on the property. Knapp Schenck ultimately secured insurance from defendant Affiliated FM Insurance Company for the period from 29 July 2002 through 29 July 2004. On 7 May 2003 and 30 July 2003, Knapp Schenck issued "Evidence of Property Insurance" forms representing that insurance coverage existed on the Ashley Creek Apartment complex.

---

1. Knapp Schenck is the only defendant that is a party to this appeal.

WELLS FARGO BANK, N.A. v. AFFILIATED FM INS. CO.

[193 N.C. App. 35 (2008)]

On 23 September 2003, flood water damaged several of the apartment buildings in the complex. Seasons Chase defaulted on the promissory note on 5 November 2003, and Wells Fargo initiated foreclosure proceedings on the property. In May 2004, Wells Fargo purchased the property in the foreclosure sale through an upset bid. On 23 August 2006, Wells Fargo submitted a formal sworn statement and proof of loss to Affiliated. Affiliated never responded to Wells Fargo's claim for coverage under the insurance policy.

Plaintiff filed an action for a declaratory judgment on 21 September 2006 against defendants Affiliated; Knapp Schenck; Seasons Chase; Alliance; and MSC Carolina. In the lawsuit, plaintiff sought a determination as to the coverage provided under the insurance contract. Knapp Schenck filed a motion to dismiss pursuant to Rule 12(b)(2), (4), and (5) of the Rules of Civil Procedure on 11 December 2006. Knapp Schenck supported its motion with an affidavit from its president, David Winship, stating that Knapp Schenck did not have any offices, property, agents, or employees in North Carolina. He also asserted that Knapp Schenck did not advertise in North Carolina or in media that might reach North Carolina and did not solicit potential clients or do business in North Carolina. Mr. Winship explained that Knapp Schenck had filed an application for certificate of authority with the North Carolina Secretary of State on 25 October 2005 because another client, unrelated to this action, owned real property located in North Carolina. Mr. Winship acknowledged that Knapp Schenck had acted as the broker to obtain the insurance policy on the Ashley Creek Apartments and that it had issued the "Evidence of Property Insurance" forms representing that coverage existed on the Ashley Creek Apartments.

In response to Knapp Schenck's motion to dismiss, plaintiff filed an affidavit from Kevin Baxter, a vice president for Capmark. Mr. Baxter's affidavit described the representations made by Knapp Schenck regarding coverage of the Ashley Creek Apartments, plaintiff's reliance on those representations, and the alleged resulting injury.

The trial court denied Knapp Schenck's motion to dismiss on 9 March 2007, finding that Knapp Schenck was the insurance broker that procured the policies of insurance to cover two North Carolina apartment complexes, one in Charlotte and the Ashley Creek Apartments in Greensboro. The court also found that Knapp Schenck issued "Evidence of Property Insurance" forms on 7 May 2003 and

**WELLS FARGO BANK, N.A. v. AFFILIATED FM INS. CO.**

[193 N.C. App. 35 (2008)]

30 July 2003, representing that insurance coverage existed for the Ashley Creek Apartments. The court further found that the policies issued by Affiliated and procured by Knapp Schenck contained North Carolina Amendatory Endorsements. Finally, the court found that Knapp Schenck applied for and, in 2005, received a Certificate of Authority from the North Carolina Secretary of State and that, since 2005, Knapp Schenck had an agent with a North Carolina mailing address.

The trial court denied Knapp Schenck's motion to dismiss, concluding that "[b]y brokering insurance coverage for real estate in North Carolina, which coverage complied with North Carolina laws through amendatory endorsements, the Defendant Knapp Schenck has availed itself of the laws and protections of the State of North Carolina." Knapp Schenck appealed the denial of its Rule 12(b)(2) motion to dismiss to this Court.

<u>Discussion</u>

**[1]** We note that this appeal is from an interlocutory order. This Court nonetheless has jurisdiction because "[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . ." N.C. Gen. Stat. § 1-277(b) (2007). *See Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614, 532 S.E.2d 215, 217 (holding that denial of a motion to dismiss for lack of jurisdiction is immediately appealable), *appeal dismissed and disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000).

**[2]** In order to determine whether North Carolina courts have personal jurisdiction over a nonresident defendant, a court must apply a two-step analysis: "First, the transaction must fall within the language of the State's 'long-arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986).

As this Court recognized in *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005),

> [t]ypically, the parties will present personal jurisdiction issues in one of three procedural postures: (1) the defendant makes a motion to dismiss without submitting any [supporting] evidence; (2) the defendant supports its motion to dismiss with affidavits,

but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.

This case falls in the third category.

When both parties submit affidavits, " 'the court may hear the matter on affidavits presented by the respective parties, . . . [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions.' " *Id.* at 694, 611 S.E.2d at 183 (quoting N.C.R. Civ. P. 43(e)). *See also Bruggeman,* 138 N.C. App. at 615, 532 S.E.2d at 217 ("If the exercise of personal jurisdiction is challenged by a defendant, a trial court may hold an evidentiary hearing including oral testimony or depositions or may decide the matter based on affidavits."). If the court decides the matter based solely on the affidavits submitted by the parties, "the plaintiff has the initial burden of establishing *prima facie* that jurisdiction is proper." *Id.* This procedure does not relieve the plaintiff of its burden of proving personal jurisdiction by a preponderance of the evidence at trial. *Id.*

"The determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact." *Replacements, Ltd. v. MidweSterling,* 133 N.C. App. 139, 140, 515 S.E.2d 46, 48 (1999). Although it is ordinarily this Court's responsibility to determine whether the trial court's findings of fact are supported by competent evidence, *id.* at 140-41, 515 S.E.2d at 48, in this case, Knapp Schenck did not assign error to the trial court's findings of fact, but rather only challenged the trial court's conclusions of law. Consequently, the trial court's findings are "presumed to be correct," and our review is limited to a determination as to whether the findings of fact support the conclusions of law. *Okwara v. Dillard Dep't Stores, Inc.,* 136 N.C. App. 587, 591-92, 525 S.E.2d 481, 484 (2000).

A. Long-Arm Statute

[3] Knapp Schenck argues first that the trial court erred in concluding that jurisdiction existed under North Carolina's long-arm statute. Plaintiff identifies as applicable the following two provisions specifying actions in which personal jurisdiction exists:

(6)  Local Property.—In any action which arises out of:

a.  A promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to create in either party an interest in, or protect, acquire,

dispose of, use, rent, own, control or possess by either party real property situated in this State; or

. . . .

(10) Insurance or Insurers.—In any action which arises out of a contract of insurance as defined in G.S. 58-1-10 made anywhere between the plaintiff or some third party and the defendant and in addition either:

a. The plaintiff was a resident of this State when the event occurred out of which the claim arose; or

b. The event out of which the claim arose occurred within this State, regardless of where the plaintiff resided.

N.C. Gen. Stat. § 1-75.4. N.C. Gen. Stat. § 58-1-10 (2007) defines a "contract of insurance" as "an agreement by which the insurer is bound to pay money or its equivalent or to do some act of value to the insured upon, and as an indemnity or reimbursement for the destruction, loss, or injury of something in which the other party has an interest."

Knapp Schenck contends that these provisions do not apply to it because it was merely a broker and that any promise to protect the property or contract of insurance was made by Affiliated. While North Carolina courts have not addressed whether N.C. Gen. Stat. § 1-75.4(6) or N.C. Gen. Stat. § 1-75.4(10) encompass activities of insurance brokers or agents responsible for procuring insurance, other states with similar long-arm statutes have considered the issue and concluded that provisions similar to § 1-75.4(6) do. Notably, Knapp Schenck has cited no authority to the contrary.

In *Seal v. Hart*, 310 Mont. 307, 309, 50 P.3d 522, 523-24 (2002), the plaintiff sold a resident of South Dakota goods intended to be resold in California, with final payment on the goods to be made to the plaintiff after the California sale. The plaintiff, as a condition of the sale, required that the purchaser obtain insurance on the goods and that the plaintiff receive proof of insurance prior to the plaintiff's relinquishing the goods. *Id.* at 309-10, 50 P.3d at 524. The purchaser contacted a South Dakota insurance agent and requested insurance coverage on the goods. After the agent solicited various bids, the purchaser chose the coverage of Canal Insurance Company. *Id.* at 309, 50 P.3d at 524. The agent faxed the plaintiff a copy of the application for insurance and a certificate of insurance establishing that

the goods were insured, subject to the conditions of the policies. *Id.* Subsequently, the goods were lost, and the insurance company denied coverage. The plaintiff brought suit in Montana against the South Dakota agent, among other defendants, for breach of a duty to procure insurance. *Id.* at 310, 50 P.3d at 524.

The Montana Supreme Court, *id.* at 312, 50 P.3d at 525, agreed with the plaintiff that long-arm jurisdiction existed over the insurance agent by virtue of M.R. Civ. P. 4B(1)(d), which provides that the Montana courts have jurisdiction over any claim for relief arising "from the doing personally, through an employee, or through an agent, of any of the following acts: . . . (d) contracting to insure any person, property or risk located within this state at the time of contracting." As in this case, the agent who undertook to procure insurance contended that the rule applied only to insurance companies and not to insurance agents. *Seal,* 310 Mont. at 315, 50 P.3d at 527. In rejecting this contention, the Montana Supreme Court explained:

> Admittedly, our research has not revealed extensive authority on [the agent's] proposition. However, those courts which have addressed this issue have held that similar long-arm jurisdictional provisions apply to insurance agents as well as the insurance companies. In *Dillon Equities v. Palmer & Cay, Inc.* (Ala. 1986), 501 So.2d 459, 462, the Alabama Supreme Court held that Alabama courts could exercise personal jurisdiction over an out-of-state insurance agent pursuant to its long-arm jurisdiction provision, which is virtually identical to Rule 4B(1)(d), M.R.Civ.P. Similarly, in *Cornell & Co. v. Home Ins. Cos.* (E.D.Pa. 1995), 1995 WL 46618, *3, in contemplating whether Pennsylvania courts could exercise personal jurisdiction over an out-of-state insurance broker, the United States District Court concluded: "It follows that since [the insurance broker] was supposed to obtain insurance for 'property or risk located within th[e] Commonwealth at the time of contracting,' jurisdiction can properly be maintained . . . ." We agree with the conclusions reached by these courts and, having found no authority to the contrary, hold that Rule 4B(1)(d), M.R.Civ.P., applies to insurance agents as well as insurance companies.

*Id.* at 313, 50 P.3d at 526.

The court then turned to whether the long-arm provision applied to the specific facts of the case before it. The court explained that "Rule 4B(1)(d), M.R.Civ.P., does not require that a plaintiff establish

the substantive elements of a contract or a duty of care before a court may exercise personal jurisdiction over a particular party." *Id.* at 314, 50 P.3d at 527. Rather, "[t]o assert personal jurisdiction over a prospective party, Rule 4B(1)(d), M.R.Civ.P., simply requires that the claim for relief arise out of the contracting to insure any person, property, or risk located within Montana at the time of contracting." *Id.* The court then defined "[a]rising from" as "a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the act which falls within the long-arm statute." *Id.*

The court noted that the plaintiff alleged that the agent had a contractual duty to insure the goods against loss or damage, and she had breached her duty to procure the insurance. The agent admitted that the property was located in Montana at the time the policy was written. *Id.* at 315, 50 P.3d at 527. The court then concluded that the plaintiff's "claim for relief arose out of [the agent's] contracting to insure property located within Montana at the time of contracting." *Id.* Consequently, the agent was subject to the jurisdiction of the courts of Montana pursuant to M.R. Civ. P. 4B(1)(d).

As the Montana Supreme Court noted, other jurisdictions have reached similar conclusions. Thus, in *Dillon Equities v. Palmer & Cay, Inc.*, 501 So. 2d 459, 461 (Ala. 1986) (quoting Ala. R. Civ. P. 4.2(a)), the Alabama Supreme Court held that a Georgia insurance agent responsible for procuring insurance on an Alabama restaurant could be sued in Alabama under a long-arm provision, Ala. R. Civ. P. 4.2(a), stating: " 'A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's . . . (G) contracting to insure any person, property, or risk located within this state at the time of contracting . . . .' " *See also Cornell & Co., Inc. v. Home Ins. Cos.*, 1995 WL 46618, *2-3 (E.D. Pa. Feb. 6, 1995) (holding that insurance agent, hired to procure insurance on property in Pennsylvania, fell within long-arm statute, 42 Pa. C.S.A. § 5322(a)(6)(i), providing for personal jurisdiction over nonresidents who contract to insure any person, property or risk located in Pennsylvania at the time of contracting); *Hiatt v. Schreiber*, 599 F. Supp. 1142, 1147 (D. Colo. 1984) (holding that insurance agents fell within long-arm statute providing that "one contracting to insure property located in Colorado is subject to jurisdiction in Colorado" even though agents "are not the insurers per se but only insurance agents").

The long-arm provisions considered in these opinions are analogous to N.C. Gen. Stat. § 1-75.4(6)(a) providing for jurisdiction based

on "[a] promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to . . . protect . . . real property situated in this State." We find the reasoning of these opinions persuasive and have located no decisions holding that comparable language does not apply to insurance agents or brokers as opposed to insurers. We, therefore, hold that N.C. Gen. Stat. § 1-75.4(6)(a) can provide a basis for asserting long-arm jurisdiction over an insurance broker such as Knapp Schenck.

In this case, plaintiff has sued Knapp Schenck for breach of an obligation to procure property insurance for Wells Fargo's benefit for the purpose of protecting real property in North Carolina. The trial court found that Knapp Schenck served as an insurance broker for policies issued covering two apartment complexes in North Carolina and that a policy was issued "through Knapp Schenck" that allegedly provided coverage for Ashley Creek Apartments. Knapp Schenck, on two occasions, provided "Evidence of Property Insurance" to Wells Fargo's predecessor representing that insurance coverage existed for the Ashley Creek Apartments. The court further found that plaintiff's complaint alleged that it had sustained damages either as a result of wrongful coverage denial or Knapp Schenck's misrepresentations concerning such insurance coverage. These findings indicating the existence of evidence of a promise made by Knapp Schenck to Wells Fargo's predecessor to protect real property, in North Carolina are sufficient to establish jurisdiction under N.C. Gen. Stat. § 1-75.4(6).[2]

B. Minimum Contacts

The question remains, however, whether the exercise of jurisdiction over Knapp Schenck is consistent with the Due Process Clause. "To satisfy the due process prong of the personal jurisdiction analysis, there must be sufficient 'minimum contacts' between the nonresident defendant and our state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " Skinner v. Preferred Credit, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945)). "Application of the 'minimum contacts' rule 'will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the

---

2. We express no opinion regarding whether N.C. Gen. Stat. § 1-75.4(10) applies to these facts.

benefits and protections of its laws.'" *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 705, 208 S.E.2d 676, 679 (1974) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (1958)). The "relationship between the defendant and the forum must be 'such that he should reasonably anticipate being haled into court there.'" *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567 (1980)).

The United States Supreme Court has recognized two bases for finding sufficient minimum contacts: (1) specific jurisdiction and (2) general jurisdiction. Specific jurisdiction exists when "the controversy arises out of the defendant's contacts with the forum state." *Id.* at 366, 348 S.E.2d at 786. General jurisdiction may be asserted over a defendant "even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient 'continuous and systematic' contacts between defendant and the forum state." *Replacements*, 133 N.C. App. at 145, 515 S.E.2d at 51 (quoting *Fraser v. Littlejohn*, 96 N.C. App. 377, 383, 386 S.E.2d 230, 234 (1989)).

Because plaintiff's contentions regarding Knapp Schenck's minimum contacts relate to the events giving rise to this cause of action, we need not address whether general jurisdiction exists. The issue before us is specific jurisdiction. "[F]or purposes of asserting specific jurisdiction, a defendant has fair warning that he may be sued in a state for injuries arising from activities that he purposefully directed toward that state's residents." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786 (internal quotation marks omitted).

The trial court concluded with respect to Knapp Schenck's minimum contacts:

4. It is reasonable to require the Defendant Knapp Schenck to litigate the issues presented in the present case in light of the Defendant Knapp Schenck's participation in obtaining insurance, and representation of insurance coverage on real estate in North Carolina.

5. By brokering insurance coverage for real estate in North Carolina, which coverage complied with North Carolina laws through amendatory endorsements, the Defendant Knapp Schenck has availed itself of the laws and protections of the State of North Carolina.

6. The Defendant Knapp Schenck is being sued in North Carolina as a result of representations made about insurance coverage for real estate located in North Carolina.

The findings of fact forming the basis for these conclusions included: (1) Knapp Schenck served as an insurance broker for two apartment complexes in North Carolina; (2) Knapp Schenck issued two "Evidence of Property Insurance" forms representing that insurance coverage existed for the Ashley Creek Apartments; (3) the policies were issued "through Knapp Schenck" by the insurer and had North Carolina Amendatory Endorsements; (4) Knapp Schenck maintained copies of the policies in its file; (5) Knapp Schenck was paid for the services it provided in connection with insurance coverage on real estate in North Carolina; and (6) Wells Fargo sustained damages as a result of Knapp Schenck's misrepresentations concerning insurance coverage.

Knapp Schenck first contends that there is no evidence that it purposefully availed itself of the privilege of conducting activities in North Carolina given that it has no office, property, agents, or employees in North Carolina; does not advertise in North Carolina or in national media that may reach North Carolina; and does not solicit potential clients, sell or provide services, or otherwise do business in North Carolina. Our appellate courts have held, however, that "[a] contract alone may establish the necessary minimum contacts where it is shown that the contract was voluntarily entered into and has a 'substantial connection' with this State." *Williamson Produce, Inc. v. Satcher*, 122 N.C. App. 589, 594, 471 S.E.2d 96, 99 (1996) (quoting *Tom Togs, Inc.*, 318 N.C. at 367, 348 S.E.2d at 786).

While North Carolina courts have not addressed the issue, the jurisdictions discussed in connection with the long-arm statute have concluded that an agreement to procure insurance for property located in the forum state is a sufficiently substantial connection to support jurisdiction. In *Cornell*, 1995 WL 46618 at *4, the federal district court noted that assertion of jurisdiction is appropriate when a party purposefully derives benefit from its interstate activities, and the Due Process Clause should not be wielded as a shield to avoid interstate obligations voluntarily assumed. The court then concluded that "it is reasonable and just to demand that [the insurance agent] litigate in the Eastern District of Pennsylvania" since the agent, hired to procure insurance, "voluntarily derived a benefit from, and created an obligation to, Cornell based upon the allocation

of risks and liabilities with respect to [the] Marcus Hook, Pennsylvania [job site.]" *Id.*

Similarly, in *Dillon Equities*, 501 So. 2d at 462 (internal quotation marks and citations omitted), the Alabama Supreme Court concluded that "[b]y procuring and placing insurance coverage on a restaurant/lounge located in Birmingham, Alabama, and deriving substantial benefit therefrom, [the insurance broker] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [The insurance broker] voluntarily assumed this interstate obligation for profit, and by doing so should have reasonably anticipate[d] being required to appear in Alabama to defend an action such as the present one, which arises out of their contracting to insure property located within Alabama." *See also Hiatt,* 599 F. Supp. at 1147-48 (holding that although defendants were mere insurance agents procuring insurance, "they have transacted business in Colorado and have thereby established the minimum contacts necessary to subject themselves to jurisdiction in this state for claims arising out of that business"; agents were properly subjected to jurisdiction in Colorado because they "afforded themselves of the benefits of the economy and laws of the State of Colorado").

Here, similar to these three cases, Knapp Schenck chose to assume an interstate obligation to procure insurance for North Carolina real estate, represented that it had fulfilled that obligation by providing coverage for the North Carolina property, and was paid for undertaking that obligation. By choosing to promise to obtain insurance for North Carolina real estate, Knapp Schenck must reasonably have anticipated that it could be sued in North Carolina if it failed to meet its promise. *See Wohlfahrt v. Schneider,* 66 N.C. App. 691, 694, 311 S.E.2d 686, 688 (1984) (reasoning that defendant was "the one that promised to make the note payments here, and in doing so he must have anticipated that here is where he would be sued if the payments were not made").

Knapp Schenck, however, points to *Skinner* and *Havey v. Valentine,* 172 N.C. App. 812, 616 S.E.2d 642 (2005), as being analogous to its situation. Because neither case involved purposeful activity directed by the defendant towards North Carolina property, we conclude those opinions are not pertinent here.

In *Skinner,* the plaintiff mortgage borrowers sought jurisdiction over a trust that had not existed at the time of the plaintiff's loan, but

subsequently was created as a passive depository for income from mortgage notes, some of which happened to be secured by North Carolina property, although the actual loan payments were made to another entity. 361 N.C. at 123-24, 638 S.E.2d at 211. The trust took no action directed toward North Carolina—indeed, our Supreme Court noted that our courts "rarely have dealt with so 'passive' a defendant." *Id.* at 124, 638 S.E.2d at 211. Moreover, the plaintiffs' allegations arose out of the execution of the original loan and not as a result of any conduct by the trust. *Id.*

In *Havey*, the plaintiff purchased furniture from a Vermont furniture store while visiting Vermont. 172 N.C. App. at 813, 616 S.E.2d at 645. The store contracted with an Indiana-based trucking company to deliver the furniture to the plaintiff's Raleigh, North Carolina residence. *Id.* During the delivery, a crate fell on the plaintiff and permanently injured him. *Id.*, 616 S.E.2d at 645-46. The plaintiff brought suit against the Indiana-based trucking company, which in turn filed a third-party complaint against the Vermont store. *Id.*, 616 S.E.2d at 646. The primary basis for personal jurisdiction relied upon by the trucking company was the furniture store's website. This Court held:

> As the website in this case does not specifically target North Carolina residents, does not allow viewers to purchase furniture directly from the website, and merely provides information to the viewer, we conclude the website is passive and does not, by itself, provide a basis for an exercise of personal jurisdiction by North Carolina courts. Similarly, because (1) all of the contract negotiations occurred outside of North Carolina, and (2) Stahler Furniture does not have any significant contacts with North Carolina, we conclude Stahler Furniture has not purposefully availed itself of the privilege of conducting activities in this state.

*Id.* at 817, 616 S.E.2d at 648. With respect to the fact that the plaintiff was injured in North Carolina and the furniture was shipped to North Carolina, this Court stressed: "[T]he key facts surrounding Yellow Transportation's third-party complaint against Stahler Furniture occurred in Vermont." *Id.* at 819, 616 S.E.2d at 649. The Court, therefore, held that specific personal jurisdiction did not exist. *Id.*

This case stands in contrast. The basis for jurisdiction does not result from passivity, and the allegations of wrongdoing are not unrelated to the North Carolina contacts. To the contrary, Knapp Schenck engaged in purposeful activity centering on North Carolina property, including promising to obtain insurance on that property, purporting

to obtain the insurance with North Carolina Amendatory Endorsements, and then sending formal representations that insurance on the North Carolina property had been obtained. Further, Knapp Schenck received compensation for the services it rendered regarding the North Carolina property. Consequently, we hold that the trial court appropriately concluded that Knapp Schenck had sufficient minimum contacts with the State of North Carolina to permit the exercise of personal jurisdiction. The trial court, therefore, properly denied the motion to dismiss.

Affirmed.

Judges McCULLOUGH and JACKSON concur.