No. 99-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 369

303 Mont. 432

16 P. 3d 359

LINDA THRELKELD and TERRY THRELKELD,

Plaintiffs and Appellants,

v.

THE STATE OF COLORADO; COLORADO STATE

UNIVERSITY; COLORADO STATE UNIVERSITY

VETERINARY MEDICINE AND BIOMEDICAL

SCIENCES; COLORADO STATE UNIVERSITY

VETERINARY TEACHING HOSPITAL; and

JOHN DOE 1-10,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Martin R. Studer, Attorney at Law, Bozeman, Montana

For Respondents:

M. Terry Fox, Colorado Assistant Attorney General, Denver, Colorado

Lyman H. Bennett, III, Attorney at Law, Bozeman, Montana

Submitted on Briefs: February 3, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Linda and Terry Threlkeld (the Threlkelds) appeal from the order of the Eighteenth Judicial District Court, Gallatin County, dismissing their complaint against the State of Colorado, Colorado State University, Colorado State University College of Veterinary Medicine and Biomedical Sciences, and Colorado State University Veterinary Teaching Hospital (collectively, CSU) for lack of personal jurisdiction. We affirm.

¶2 The sole issue on appeal is whether the District Court erred in concluding Montana does not have personal jurisdiction over CSU pursuant to Rule 4B(1), M.R.Civ.P.

*BACKGROUND*

¶3 The Threlkelds are in the business of raising and breeding Appaloosa horses outside Bozeman, Montana. In 1996, one of their premier stud horses developed a neurological condition known as ataxia, or instability in the hind quarters. After unsuccessful initial treatment, the Threlkelds and their veterinarian, Dr. David Catlin, decided to contact CSU's Veterinary Teaching Hospital (VTH) for a consultation.

¶4 The Threlkelds and Dr. Catlin called CSU several times during September and October of 1996, to discuss the horse's condition and treatment. During this period, Dr. Catlin took two blood samples from the horse and sent them to a CSU lab for testing. After continued treatment efforts were unsuccessful, the Threlkelds and Dr. Catlin decided to take the horse to CSU for neurological testing. Dr. Catlin contacted the VTH to arrange a referral and the Threlkelds drove to Fort Collins, Colorado, and admitted the horse on November 14, 1996. The horse died the next morning at the VTH.

¶5 The Threlkelds subsequently sued CSU for veterinary malpractice. They later amended their complaint to add deceit and negligent misrepresentation or fraud.

¶6 CSU moved to dismiss the complaint pursuant to Rule 12(b)(2), M.R.Civ.P., for lack of personal jurisdiction pursuant to Rule 4B(1), M.R.Civ.P. With leave of court, the parties conducted discovery to determine whether facts existed which would establish personal jurisdiction over CSU. At the close of discovery and after full briefing on CSU's motion, the District Court concluded Montana does not have personal jurisdiction over CSU and dismissed the action. The Threlkelds appeal.

## STANDARD OF REVIEW

¶7 CSU moved to dismiss for "lack of jurisdiction over the person" pursuant Rule 12(b)(2), M.R.Civ.P. Motions to dismiss are construed in a light most favorable to the nonmoving party and should not be granted unless, taking all well-pled allegations of fact as true, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Hilands Golf Club v. Ashmore* (1996), 277 Mont. 324, 328, 922 P.2d 469, 471-72 (citations omitted). A district court's determination that it lacks jurisdiction is a conclusion of law which we review to determine whether the court's interpretation of the law is correct. *Hilands Golf Club*, 277 Mont. at 328, 922 P.2d at 472.

## DISCUSSION

## ¶ 8 **Did the District Court err in concluding Montana does not have personal jurisdiction over CSU?**

¶9 This Court applies a two-part test to determine whether a Montana court can exercise personal jurisdiction over a nonresident defendant. First, we determine whether personal

jurisdiction exists pursuant to Rule 4B(1), M.R.Civ.P. Second, we determine whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the due process clause. *Bird v. Hiller* (1995), 270 Mont. 467, 470, 892 P.2d 931, 932 (citations omitted). Thus, if personal jurisdiction does not exist pursuant to Rule 4B(1), the second part of the test need not be addressed.

¶10 Personal jurisdiction can be either general or specific. General jurisdiction exists over "[a]ll persons found within the state of Montana . . . ." *See* Rule 4B(1), M.R.Civ.P.; *Simmons Oil Corp. v. Holly Corp.* (1990), 244 Mont. 75, 83, 796 P.2d 189, 194. A nonresident defendant is "found within" Montana for general jurisdiction purposes if its activities in the state are either "substantial" or "continuous and systematic ." *Simmons Oil*, 244 Mont. at 83, 796 P.2d at 194 (citations omitted). Specific jurisdiction exists over a nonresident defendant when the plaintiff's cause of action arises from the specific circumstances set forth in Rule 4B(1)(a) through (f), M.R.Civ.P.

¶11 In the present case, the Threlkelds contend the District Court erred in concluding Montana does not have either general or specific jurisdiction over CSU. We examine their contentions in turn.

## A. General Jurisdiction

¶12 The Threlkelds contend CSU maintains substantial or continuous and systematic contacts with Montana which are so pervasive that CSU can be said to be found within the state. Their contention is based on six undisputed facts of record: (1) the VTH holds itself out as a regional veterinary facility and accepts referrals from states throughout the area, including Montana; (2) CSU maintains a Web site about programs at the university, including the VTH, which is accessible in Montana; (3) CSU holds continuing education seminars which are attended by individuals from Montana and advertises these seminars in nationally distributed equine-related magazines; (4) CSU sends newsletters and brochures to individuals in Montana which provide updates on the activities of the VTH, publicize selected research projects, and advertise continuing education seminars; (5) CSU solicits donations from alumni and other interested individuals or entities, including persons in Montana; and (6) CSU sends press releases to newspapers throughout the region, including Montana, regarding research projects and other events at the VTH.

¶13 The Threlkelds rely on *Reed v. American Airlines, Inc.* (1982), 197 Mont. 34, 640 P.2d 912, in arguing that the above facts establish the substantial or continuous and

systematic contacts necessary to "find" CSU within Montana for general jurisdiction purposes. Their reliance on *Reed* is misplaced.

¶14 In *Reed*, we concluded American Airlines could be found in Montana where it advertised in the state by paying for listings in 19 Montana telephone directories and purchasing television air time; sold airline tickets to Montana residents through Montana travel agents and through a toll-free telephone number; consistently furnished material to travel agents in Montana for the purpose of soliciting business; sent employees here to train Montana travel agents; and derived substantial revenue from its business dealings in Montana. *Reed*, 197 Mont. at 36, 640 P.2d at 913-14. This last factor was crucial to our determination in *Reed*:

> Before the activities of a foreign corporation can create a physical presence within Montana, those activities must be substantial, continuous, and systematic as opposed to isolated, casual, or incidental. The activities must comprise a significant component of the company's business, although the percentage as related to total business may be small.

*Reed, 197 Mont. at 36, 640 P.2d at 914.*

¶15 In the present case, the Threlkelds sought out CSU to perform a veterinary service in Colorado. CSU does not have a marketing campaign directed specifically toward Montanans via telephone directory listings or television advertisements. It sells no product to and does not directly solicit referrals from Montanans. It sends no employees to this state. Moreover, the record does not disclose that a significant component of the VTH's business--that is, referrals and subsequent activities in Colorado--originates in Montana, much less that any such business originates here because of any activities by CSU within this state. In short, CSU's contacts with Montana are both qualitatively and quantitatively minimal, unlike those of American Airlines in *Reed*. *Reed* does not support a determination that CSU's contacts with Montana are either substantial or continuous and systematic.

¶16 Furthermore, CSU's activities in the present case are substantially similar to those of the defendant in *Bedrejo v. Triple E Canada, Ltd.*, 1999 MT 200, 295 Mont. 430, 984 P.2d 739, the Threlkelds' argument to the contrary notwithstanding. In *Bedrejo*, we concluded that a nonresident motor home manufacturer could not be found within Montana for purposes of general personal jurisdiction even though the manufacturer advertised in

nationally circulated magazines which were distributed in Montana; maintained an interactive Web site available to Montanans with Internet access; established a network of dealerships, none of which was located in Montana but which provided sales coverage for Montana; and provided a club for members which organized trips across the United States and Canada, some of which necessitated travel through Montana. *Bedrejo*, ¶¶ 8, 12. In determining that the defendant was not subject to general jurisdiction, we noted it was not registered to do business in Montana; did not have an office, facility or real estate in Montana; did not maintain a telephone listing in the state or engage in direct advertising here; and did not have employees, distributers or dealers here. *Bedrejo*, ¶ 11.

¶17 In the present case, CSU does not maintain any office or facilities in Montana; does not own any real property here; has no employees or agents within the state; does not engage in direct advertising in Montana and is not listed in any Montana telephone directory. CSU offers consultations to and accepts referrals from Montana veterinarians and animal owners, but does so in Colorado and only to those Montanans who seek out CSU on their own initiative. Nor is there evidence that CSU's Web site is anything more than a medium for the dissemination of information to Internet users. As in *Bedrejo*, the facts that CSU has a Web site and advertises in national magazines--both of which reach Montana--are insufficient contacts to establish general jurisdiction. *See Bedrejo*, ¶¶ 8-12.

¶18 Finally, CSU's promotional activities--newsletters, brochures and donation solicitations sent to Montana residents on their mailing lists and press releases sent to newspapers in the area, including Montana--do not establish that CSU is present or found within the state. CSU's purpose in carrying on these activities is to provide to alumni or friends updates and opportunities to make charitable contributions and to report important research discoveries and projects at the VTH to the public. On this record, none of CSU's activities establishes that it seeks to engage in the economic life of our state. Nor has CSU availed itself of the privilege of conducting such substantial activities within this state that, like any other Montana resident, it should reasonably anticipate being haled into court here for legal claims against it. *See Simmons v. State* (1983), 206 Mont. 264, 277-78, 670 P.2d 1372, 1379.

¶19 The essence of the Threlkelds' argument is that they sought veterinary services from CSU because it is highly visible in equine-related circles. They trusted CSU because they frequently saw CSU advertisements in horse magazines and newspaper articles about the VTH, and knew people who attended CSU continuing education seminars or received a donation solicitation in the mail. At the bottom line, they argue that, because it is so

visible here, CSU must be found within the state. CSU's visibility within the Montana veterinary and equine community does not equate, however, to purposeful contacts with the state which are substantial or continuous and systematic. We conclude, therefore, CSU is not "found within" Montana, pursuant to Rule 4B(1), M.R.Civ.P., for purposes of general personal jurisdiction.

## B. Specific Jurisdiction

¶20 The Threlkelds also argue Montana has specific personal jurisdiction over CSU pursuant to Rule 4B(1), M.R.Civ.P., because their claims arise from CSU's transaction of business here and CSU's acts resulted in the accrual of torts in Montana on which the present case is based.

### 1. Transaction of Business

¶21 Under Rule 4B(1)(a), M.R.Civ.P., a defendant is subject to jurisdiction in Montana for any claim for relief "arising from . . . the transaction of any business within this state." Relying on *Great Plains Crop Management, Inc. v. Tryco Mfg. Co., Inc.* (D. Mont. 1983), 554 F.Supp. 1025, the Threlkelds assert CSU transacted business in Montana by sending promotional materials into the state, providing free consultation to Montana veterinarians, accepting and returning the Threlkelds' telephone calls, and recommending procedures that could not be performed in Montana but could be performed at the VTH.

¶22 It is true, as the Threlkelds urge, that the court in *Great Plains* concluded a nonresident defendant transacted business in Montana for purposes of Rule 4B(1), M.R. Civ.P., where the defendant advertised in a magazine that reached Montana, mailed brochures to Montana, and placed telephone calls to and accepted calls from Montana residents. However, the business transaction in *Great Plains* also included two occasions on which the defendant sold and shipped farm implements to the Montana plaintiff, and the parties had negotiated for a third shipment. *Great Plains*, 554 F.Supp. at 1027. These latter activities are not similar to any of CSU's interactions with the Threlkelds. CSU did not sell or ship products to the Threlkelds and the parties did not negotiate a contract. *Great Plains* is of no assistance to the Threlkelds here.

¶23 Our decision in *Edsall Const. Co., Inc. v. Robinson* (1991), 246 Mont. 378, 804 P.2d 1039, however, is instructive to the present case. There, we concluded that a Utah subcontractor who submitted a bid to a Montana general contractor over the telephone did

not transact business in Montana under the meaning of Rule 4B(1)(a), M.R.Civ.P., particularly in light of the fact that the Montana plaintiff initiated contact with the defendant and the contract was to be performed entirely out of state. *Edsall*, 246 Mont. at 382-83, 804 P.2d at 1042. Similarly here, the Threlkelds and their veterinarian, on their own initiative, contacted CSU for a consultation, sent blood samples to CSU, requested that the VTH admit their horse as a referral and then transported the horse to Colorado. The services CSU was to perform were to be performed in Colorado.

¶24 It is not necessary to consider whether CSU's promotional activities constitute the transaction of business within Montana. To establish specific jurisdiction, the claim at issue must "arise from" the act in question. Rule 4B(1)(a), M.R.Civ.P. The Threlkelds' claims of deceit and misrepresentation or fraud all arise from their allegations that CSU personnel made specific representations and assurances to them regarding the care of the horse and the availability of facilities. The Threlkelds do not argue, however, that these claims arise from representations contained in information provided by CSU in its newsletters, brochures, donation solicitations or press releases.

¶25 At most, CSU engaged in interstate communication with the Threlkelds and their veterinarian by accepting and returning their telephone calls and returning blood test results to them. However, such interstate communication does not, by itself, constitute the transaction of business in Montana for purposes of Rule 4B(1)(a), particularly where CSU was sought out by the Threlkelds. *See Edsall*, 246 Mont. at 382, 804 P.2d at 1042. On these facts, we conclude the Threlkelds' claims do not arise from CSU's transaction of business within Montana.

### 2. Accrual of a Tort

¶26 The Threlkelds also argue that Montana has specific jurisdiction over CSU pursuant to Rule 4B(1)(b), M.R.Civ.P., which provides that a defendant is subject to jurisdiction in Montana for any claim for relief "arising from . . . the commission of any act which results in the accrual within this state of a tort action." As stated above, the Threlkelds allege deceit and misrepresentation or fraud in addition to veterinary malpractice. The former claims all arise from the Threlkelds' allegations that CSU personnel recommended a course of treatment for their horse, and assured them CSU could provide such treatment and the VTH facility was properly equipped for an ataxic horse. They contend the assurances were false because CSU personnel knew facilities were not available due to a recent *salmonella* outbreak and the horse did not receive the quality of care promised.

¶27 In arguing their deceit and misrepresentation or fraud claims accrued in Montana, the Threlkelds rely on *Johnson Flying Service, Inc. v. Mackey Int'l, Inc.* (D. Mont. 1975), 32 St.Rep. 879. There, the federal district court concluded that a claim of fraud accrued in Montana where a nonresident defendant made representations over the telephone to a Montana plaintiff regarding the airworthiness of an airplane the defendant was selling. Upon purchasing the airplane and transporting it to Montana, the plaintiff discovered it did not meet the defendant's representations. The airplane had to be grounded in Montana. *Johnson Flying Service*, 32 St.Rep. at 880-81. The court concluded the fraud claim accrued in Montana because the fraudulent statements were received here, the airplane was brought into the state for use and, consequently, the injuries were incurred here. *Johnson Flying Service*, 32 St.Rep. at 882-83. *Johnson Flying Service* is distinguishable.

¶28 There, the record was unclear whether Johnson or the defendant's agent initiated the telephone contacts which began the negotiations for the airplane. *Johnson Flying Service*, 32 St.Rep. at 880. In the present case, it is undisputed that the Threlkelds and their veterinarian contacted CSU with regard to a consultation, and everything thereafter-- including telephone conversations in which the Threlkelds allege CSU made deceitful or fraudulent representations--grew out of those initial communications from the Threlkelds to CSU. Moreover, unlike *Johnson Flying Service*, this case does not involve either discovery of the purportedly deceitful or fraudulent misrepresentations within this state via events occurring here after the statements of which the Threlkelds complain or bringing a product or service into the state.

¶29 Moreover, the federal court in *Johnson Flying Service*, noting the absence of Montana decisional authority, relied entirely on federal case authorities in determining that whether or not the initial contacts between the parties began in Montana was irrelevant because the fraudulent statements were received here. *Johnson Flying Service*, 32 St.Rep. at 882-83 (citations omitted). Our subsequent decision in *Bird* provides guidance in this regard.

¶30 In *Bird*, several Montana residents contacted and then hired an Idaho attorney to represent them on claims resulting from an automobile accident in Idaho. After a fee dispute arose over settlement proceeds, the plaintiffs sued the Idaho attorney in Montana, asserting tort claims for fraud and deceit stemming from representations and omissions in a fee agreement. *Bird*, 270 Mont. at 468-70, 892 P.2d at 932. In response to the attorney's motion to dismiss for lack of personal jurisdiction, the plaintiffs contended the fraud and deceit accrued in Montana for Rule 4B(1) purposes when the attorney sent the fee agreement to them in Montana. We disagreed on appeal and concluded that, because the

fraud and deceit claims arose from the attorney's representation of the plaintiffs and all representation regarding the plaintiffs' automobile accident claims occurred in Idaho, any claim of fraud or deceit would have accrued in Idaho. We also were unwilling to base personal jurisdiction on interstate communications relating to acts to be performed in another state. *Bird*, 270 Mont. at 472-73, 892 P.2d at 934. Applying *Bird* to the present case, it is clear that the Threlkelds deceit and fraud claims relate entirely to services to be performed in Colorado and the mere existence of interstate communications relating to those services does not provide a basis for personal jurisdiction over CSU.

¶31 The Threlkelds also argue CSU's representations over the telephone are similar to a telephone conversation that formed the basis for specific jurisdiction in *McGee v. Riekhof* (D. Mont. 1978), 442 F.Supp. 1276. In *McGee*, the defendant, a Utah ophthalmologist, treated the Montana plaintiff in Utah for a detached retina. The plaintiff returned to Montana and updated the defendant about his condition over the telephone. During one such conversation, the defendant advised the plaintiff he could return to work. The plaintiff did so, suffered a retinal re-detachment and massive retinal tear as a result, and sued the Utah ophthalmologist for negligence in Montana. *McGee*, 442 F.Supp. at 1277. In denying the defendant's motion to dismiss for lack of personal jurisdiction, the *McGee* court distinguished the facts before it from cases where the injury and effects in question resulted from treatment obtained in another state. *McGee,* 442 F.Supp. at 1278-79. *McGee* turned on the fact that the injury in question resulted from medical service provided in Montana--a new diagnosis rendered telephonically to the plaintiff while in Montana--as opposed to effects or injures suffered in Montana as a result of medical services rendered in Utah. *McGee,* 442 F.Supp. at 1278-79.

¶32 The assurances given by CSU personnel in the present case are in no way similar to the medical diagnosis given by the defendant in *McGee*. The Threlkelds' horse was treated at CSU and died at CSU. We conclude, therefore, that the Threlkelds' claims do not arise from any act by CSU resulting in the accrual in Montana of a tort action.

¶33 The Threlkelds also argue at length that the District Court failed to take the allegations of their amended complaint as true and failed to consider facts established in discovery which would support the existence of personal jurisdiction over CSU. Based on our review of the record, neither contention has merit. First, a court need only take well-pled allegations of fact as true in considering a Rule 12(b) motion to dismiss. *Hilands Golf Club*, 277 Mont. at 328, 922 P.2d at 472. Courts are not required, however, to accept allegations of law and legal conclusions in a complaint as true. *See Commonwealth Edison*

*Co. v. State* (1980), 189 Mont. 191, 215, 615 P.2d 847, 860. Thus, the District Court was free to ignore the numerous allegations of law contained in the Threlkelds' amended complaint.

¶34 Second, the District Court set forth its analysis in an Explanatory Comment immediately following its grant of CSU's motion to dismiss. That analysis reflects that the court considered the undisputed facts obtained through the parties' nearly year-long discovery related to the personal jurisdiction question.

¶35 Finally, the Threlkelds point out that a motion to compel discovery remains pending in the District Court. They urge that, if the District Court found their evidence supporting personal jurisdiction lacking, it should have compelled further discovery. They do not explain, however, what matters sought through their motion to compel might result in facts which would establish personal jurisdiction. Furthermore, the Threlkelds did not request a ruling on their motion to compel during proceedings on CSU's motion to dismiss and, as stated above, discovery in this case lasted nearly a year.

¶36 The Threlkelds having failed to establish the existence of personal jurisdiction over CSU in Montana under any of the Rule 4B(1), M.R.Civ.P., grounds raised, it is not necessary to address whether the exercise of such jurisdiction comports with traditional notions of fair play and substantial justice. *See Bird*, 270 Mont. at 473, 892 P.2d at 934. We hold that the District Court did not err in concluding Montana lacks personal jurisdiction over CSU.

¶37 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART