FILED

09/21/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0659

DA 16-0659

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 235

ZACHARY SCOTT BUCKLES, deceased,
by and through his personal representative
NICOLE R. BUCKLES, and NICOLE R. BUCKLES,
personal representative, on behalf of the heirs of
ZACHARY SCOTT BUCKLES,

        Petitioners and Appellants,

    v.

CONTINENTAL RESOURCES, INC., an
Oklahoma Corporation, BH FLOWTEST, INC.,
a Montana Corporation, BLACK ROCK TESTING, INC.,
a Montana Corporation, JANSON PALMER, d/b/a
BLACK GOLD TESTING, and JOHN DOES 1-V,

        Respondents and Appellees.

APPEAL FROM:     District Court of the Seventh Judicial District,
                  In and For the County of Richland, Cause No. DV 15-14
                  Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           A. Clifford Edwards, Roger W. Frickle, Jared C. B. Frickle, Edwards,
           Frickle & Culver, Billings, Montana

      For Appellees:

           W. Scott Mitchell, Michael P. Manning, Holland & Hart LLP, Billings,
           Montana
           (*Attorneys for Continental Resources, Inc.*)

                         Submitted on Briefs: April 19, 2017
                               Decided: September 21, 2017

Filed:

_____
                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Nicole R. Buckles ("Buckles"), as the personal representative of the estate of Zachary Scott Buckles ("Zachary"), appeals the August 19, 2016 order of the Seventh Judicial District Court, Richland County, granting Continental Resources, Inc.'s ("Continental") motion to dismiss. We address the following issue:

> *Whether the District Court erred by dismissing Buckles' Complaint on grounds that Continental Resources, Inc., is not subject to personal jurisdiction in Montana.*

¶2    We reverse and remand to the District Court for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    On April 28, 2014, Zachary died of exposure to high levels of hydrocarbon vapors while manually gauging crude oil production tanks on Continental's Columbus Federal 2-16H well site near Alexander, North Dakota. The Columbus Federal 2-16H well site is a tank battery consisting of twenty tanks that support five production oil wells, including the Tallahassee 2-16H tank number three and Tallahassee 3-16H tank number one. These wells are located on the Bakken Reservoir. Continental oversees operation of the Columbus Federal 2-16H well site from its corporate office in Sidney, Montana.

¶4    Around April 17, 2014, Zachary was dispatched by his employer, Janson Palmer, doing business as Black Gold Testing ("Black Gold"), to perform manual tank gauging of the crude oil production tanks on Continental's Columbus Federal 2-16H well site. Black Gold was contracted to perform manual tank gauging activities for Continental pursuant to Continental's Master Service Contract with BH Flowtest, Inc., who subcontracted with Black Rock Testing, Inc., who, in turn, subcontracted with Black Gold. BH Flowtest,

2

Black Rock, and Black Gold are all Montana business entities named as Co-Defendants with Continental in this action.

¶5 Continental is an Oklahoma corporation authorized to do business in Montana since 1990. Continental has significant operations in Montana, North Dakota, South Dakota, and Oklahoma, with field offices in Montana, North Dakota, South Dakota, Oklahoma, and Texas. The Company owns an interest in 508 oil and gas wells in Montana and operates 348 oil and gas wells in Montana. Continental owns 119 motor vehicles that are licensed and registered in the State. The Company also owns real property in multiple Montana counties, including in Richland County where this case is venued. Continental maintains two Montana field offices in Baker and Sidney and three North Dakota field offices in Killdeer, Rhame, and Tioga.

¶6 On March 2, 2015, Buckles filed suit in the Montana Seventh Judicial District Court, Richland County, alleging that Continental and the other Defendants are liable for Zachary's death. The complaint alleged that Continental and the other Defendants had a legal duty under state and federal law to maintain a safe and secure oil well site, and that Continental and the other Defendants breached their duty by allowing an inherently dangerous and unsafe well site to be operated without adequate or appropriate air monitoring equipment in place for the tank gauging activities.

¶7 Buckles argued the Montana Safe Place to Work Act and federal Occupational Safety and Health Act required the Defendants to properly train and adequately equip Zachary, which they failed to do. Following jurisdictional discovery, Buckles cited an affidavit by Continental's Area Production Manager of Bakken Operations and an Excel

spreadsheet produced by Black Gold containing flow data for Continental's Columbus Federal 1-16H, Tallahassee 2-16H, and Tallahassee 3-16H well sites that denotes Continental's Sidney, Montana office was responsible for oversight of the well site where Zachary died.

¶8 On April 17, 2015, Continental filed a motion to dismiss for lack of personal jurisdiction. The parties fully briefed and submitted the issue to the District Court. On August 19, 2016, the District Court granted Continental's motion to dismiss. The District Court did not hold an evidentiary hearing. The District Court's Order did not make any factual findings regarding personal jurisdiction, did not address Buckles' allegations concerning personal jurisdiction made in her Complaint, and did not note whether it considered those allegations in the light most favorable to Buckles. The Order contained only a paragraph setting forth the procedural history of the case and concluded that the motion was being granted "[f]or the reasons argued by Continental."

**STANDARDS OF REVIEW**

¶9 "We review de novo a district court's decision on a motion to dismiss for lack of personal jurisdiction, construing the complaint 'in the light most favorable to the plaintiff.'" *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 7, 378 Mont. 75, 342 P.3d 13 (quoting *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 2011 MT 128, ¶ 12, 360 Mont. 517, 255 P.3d 143). Motions to dismiss are construed in a light most favorable to the nonmoving party and should not be granted unless, taking all well-pled allegations of fact as true, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Threlkeld v.*

*Colorado*, 2000 MT 369, ¶ 7, 303 Mont. 432, 16 P.3d 359. We review a district court's findings of fact and conclusions of law regarding personal jurisdiction to determine whether the findings are clearly erroneous and whether the conclusions are correct. *Nolan v. Riverstone Health Care*, 2017 MT 63, ¶ 9, 387 Mont. 97, 391 P.3d 95.

**DISCUSSION**

¶10 *Whether the District Court erred in holding that Continental Resources, Inc., is not subject to personal jurisdiction in Montana.*

¶11 This Court applies a two-part analysis to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant. First, we determine whether personal jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1). *Threlkeld*, ¶ 9. Second, if personal jurisdiction exists pursuant to M. R. Civ. P. 4(b)(1), we then determine whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment. *Threlkeld*, ¶ 9. In that regard, the United States Supreme Court has recently addressed the constitutional parameters of state courts exercising personal jurisdiction of nonresident defendants. *See Bristol-Myers Squibb Co. v. Superior Court*, ___U.S.___, 137 S. Ct. 1773 (2017); *BNSF Ry. v. Tyrrell*, ___ U.S. ___, 137 S. Ct. 1549 (2017); *see also Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746 (2014); *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 918, 131 S. Ct. 2846 (2011). "[A] state court may exercise personal jurisdiction over an out-of-state defendant who has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tyrrell*, ___ U.S. ___, 137 S. Ct.

5

at 1558 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (internal quotation marks omitted).

¶12 Personal jurisdiction can be either general or specific. Buckles argues that both are present in this case. We address each in turn.

**A.    General Personal Jurisdiction**

¶13 In *Tyrrell*, the U.S. Supreme Court reviewed this Court's exercise of general personal jurisdiction over BNSF Railway Company ("BNSF") in a Federal Employers' Liability Act suit brought in Montana by two non-resident plaintiffs that sustained injuries outside the State. In light of the peculiar statutory nuances of the FELA, we held that general jurisdiction existed. The U.S. Supreme Court reversed. The Court stated that "the *Fourteenth Amendment's Due Process Clause* does not permit a State to hale an out-of-state corporation before its courts when the corporation is not 'at home' in the State and the episode-in-suit occurred elsewhere." *Tyrrell*, ___ U.S. at ___, 137 S. Ct. at 1554 (citing *Diamler*, 571 U.S. at ___, 134 S. Ct. at 753-54) (emphasis in the original). The Court concluded:

> BNSF [is not] so heavily engaged in activity in Montana "as to render [it] essentially at home" in that State. See *Daimler*, 571 U. S., at ___, 134 S. Ct. 746, 187 L. Ed. 2d 624, 633(internal quotation marks omitted). As earlier noted, BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana. But, as we observed in *Daimler*, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.*, at ___, n. 20, 134 S. Ct. 746, 187 L. Ed. 2d 624, 641 (internal quotation marks and alterations omitted). Rather, the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Ibid*. In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit

6

the assertion of general jurisdiction over claims like [Plaintiffs'] that are unrelated to any activity occurring in Montana.

*Tyrrell*, ___ U.S. at ___, 137 S. Ct. at 1559.

¶14 As noted above, Continental is incorporated in Oklahoma and maintains its principal place of business in Oklahoma. Although it does substantial business in Montana and maintains substantial contacts with Montana, it cannot be said to be "at home" in Montana for purposes of establishing general personal jurisdiction within the parameters established in *Tyrrell*. Thus, Continental is not subject to general personal jurisdiction in Montana.

## B. Specific Personal Jurisdiction

¶15 Absent general jurisdiction, a Montana court may assert specific personal jurisdiction over a nonresident defendant when the plaintiff's cause of action arises from the specific circumstances set forth in Montana's long-arm statute, M. R. Civ. P. 4(b)(1). *Threlkeld*, ¶ 10. M. R. Civ. P. 4(b)(1), states, in pertinent part:

> Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> (C) the ownership, use, or possession of any property, or of any interest, therein situated within Montana . . . .

Specific jurisdiction depends on the "relationship among the defendant, the forum, and the litigation," and on whether the defendant's "suit-related conduct" created a substantial connection with the forum state. *Tackett v. Duncan*, 2014 MT 253, ¶ 19, 376 Mont. 348, 334 P.3d 920 (internal citations omitted). The defendant's relationship with the forum

7

and the litigation "must arise out of contact that the 'defendant *himself*' created with the forum." *Tackett*, ¶ 32 (emphasis in original). "While 'a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,] . . . a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Tackett*, ¶ 33 (quoting *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1123 (2013)).

¶16 We have adopted the following factors to determine whether a defendant is subject to specific personal jurisdiction in Montana:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Simmons v. State*, 206 Mont. 264, 276, 670 P.2d 1372, 1378 (1983) (quoting *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)). If a court concludes, as a matter of statutory construction, that the nonresident defendant "did not engage in any of the several activities enumerated in our long-arm statute, the analysis ends and the court must decline jurisdiction. However, if the non-resident has done something which potentially confers jurisdiction, we will advance to the due process component which is ultimately determinative of the jurisdictional question." *B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, ¶ 16, 323 Mont. 308, 100 P.3d 127 (citing *Simmons*, 206 Mont. at 272, 670 P.2d at 1376).

¶17 Our standard for establishing specific personal jurisdiction comports with the U.S. Supreme Court's due process analysis on this issue:

In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Bristol-Myers Squibb*, ___U.S.at ___, 137 S. Ct. at 1780 (citations and internal quotation marks omitted; emphasis in original).

¶18 Relevant to the issue of specific personal jurisdiction, Buckles' Complaint alleges the following:

(1) That Continental and the Montana Co-Defendants breached their duty to "maintain a safe oil well site and secure work area on the oil well site pursuant to contract and in fact."

(2) That "Defendants, and each of them, . . . allow[ed] an inherently dangerous and unsafe well site to be operated which did not have adequate or appropriate air monitoring equipment in place for the tank gauging activities being performed by Zachary and by failing to protect Zachary from overexposure to hydrocarbon vapors all of which was a substantial contributing factor to Zachary's fatal injuries and damages . . . ."

(3) "[T]hat at all times herein mentioned all Defendants . . . (i) jointly perpetrated the acts described herein with their Co-Defendants, (ii) were the successors in interest to, or agents, principals, partners, joint venturers, or co-conspirators of their Co-Defendants in doing the things herein alleged and were acting within the scope and authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their Co-Defendants in doing the things herein alleged and therefore are liable, jointly and severally, for all damages and other relief or remedies sought by Plaintiffs in this action."

¶19 Continental acknowledges that "Continental's Sidney office is assigned oversight of the North Dakota wells at issue." Continental contends, however, that "oversight does not include responsibility for directing or controlling contractors' employees' tank gauging activities and nothing . . . suggests that Continental took some action or made some omission in Montana to give rise to the Estate's claims." Whether Continental's

9

Montana office directed or controlled Zachary's activities, however, is not the end of the analysis.

¶20   The dispositive question, as it pertains to specific personal jurisdiction over Continental, is whether a relationship exists "among the defendant [Continental], the forum, *and the litigation*," *Tackett*, ¶ 19 (emphasis added), not just with Continental's contacts with Montana in general. Following the U.S. Supreme Court's direction, we have previously held:  "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Tackett*, ¶ 33 (quoting *Walden*, ___ U.S. at ___, 134 S. Ct. at 1123). "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb*, ___U.S. at ___, 137 S. Ct. at 1780 (internal quotation omitted; emphasis in original).

¶21   In this case, Continental's contacts with Montana, as alleged in Buckles' Complaint, relate to the controversy at issue. Continental's argument regarding specific personal jurisdiction focuses on whether or not it specifically directed or controlled Zachary's tank gauging activities on the day of his death. The problem with this argument is that whether or not Continental specifically directed or controlled Zachary's tank gauging activities is not the principal basis for Buckles' Complaint as it pertains to Continental's liability for Zachary's death.[1]  Buckles' Complaint alleges that the incident that led to Zachary's death occurred at a well site, the operation of which was overseen

---

[1] Buckles does make one allegation at ¶ 15 of the Complaint that "the Defendants[] . . . directed and required Zachary, who did not have adequate and appropriate air monitoring equipment or training and who was exposed to hydrocarbon vapors, to manually gauge crude oil production tanks on Continental's Federal 2-16 well site."

10

by Continental's Sidney, Montana office. Regarding that well site, Buckles' Complaint alleges, in pertinent part, that Continental—along with the Montana Co-Defendants—breached their duty to "maintain a safe oil well site and secure work area," and "allow[ed] an inherently dangerous and unsafe well site to be operated."

¶22 Continental argues its contractors and subcontractors directed the tank gauging activities of Buckles and that it effectively contracted away liability for the tank gauging services. As to the relative liability of the respective Co-Defendants, however, Buckles' Complaint alleges:

> Defendants . . . (i) jointly perpetrated the acts described herein with their Co-Defendants, (ii) were the successors in interest to, or agents, principals, partners, joint venturers, or co-conspirators of their Co-Defendants in doing the things herein alleged and were acting within the scope and authority or in furtherance of a common scheme or design with the knowledge, permission, consent or ratification of their Co-Defendants in doing the things herein-alleged and therefore are liable, jointly and severally, for all damages and other relief or remedies sought by Plaintiffs in this action.

¶23 Ordinarily, the general contractor and owner of a construction project are not liable for injuries to a subcontractor's employees. *Cunnington v. Gaub*, 2007 MT 12, ¶ 13, 335 Mont. 296, 153 P.3d 1. However, "an owner may be held liable for the injuries sustained by the employee of a subcontractor if the owner exercised control in such a way as to create the dangerous condition . . . or if the owner knew or should have known of the dangerous condition and retained sufficient authority to direct how the work was performed[.]" *Cunnington*, ¶ 23. Whether Continental is ultimately liable for Zachary's death through contract or agency vis-à-vis its Montana Co-Defendants goes to the merits of Buckles' theory of liability. "[A] court should determine jurisdiction only on the necessary jurisdictional facts and not on the merits of the case." *Seal v. Hart*,

11

2002 MT 149, ¶ 23, 310 Mont. 307, 50 P.3d 522. "To dismiss a claim for lack of personal jurisdiction on the grounds that one party did not owe the opposition a duty of care would compel an analysis of the claim's merits prior to the threshold jurisdictional inquiry." *Seal*, ¶ 25.

¶24 As it pertains to Continental's, and this particular claim's, relationship to Montana, Buckles' Complaint can be boiled down to two points: (1) Continental, acting jointly with its Montana Co-Defendants, caused Zachary's death; and (2) Continental "allow[ed] an inherently dangerous and unsafe well site to be operated," which resulted in Zachary's death. Regarding operation of the well site at issue, Continental's relationship to Montana is not merely incidental. Operation of this well site was overseen by Continental's corporate office in Sidney, Montana.

¶25 Taking all of Buckles' well-pled allegations as true, it does not appear beyond doubt that she has failed to establish the Montana Court's specific personal jurisdiction over Continental. Thus, considering only the allegations pled in the Complaint, the District Court erred by granting Continental's motion to dismiss. The District Court allowed the parties to engage in limited discovery to further develop the jurisdictional facts. Buckles presented evidence that she argues demonstrates that oversight of the well-site at issue was conducted by Continental's Sidney office, and that Continental contracted with Montana entities to service the wells. Continental presented evidence that it claims demonstrates that oversight of the well-site "does not include directing or controlling the tank contractors' employees' gauging activities."

¶26 The District Court dismissed Buckles' Complaint against Continental without any factual findings or substantive analysis. The District Court did file a response to a petition for writ of supervisory control that Buckles filed after the District Court entered its Order of dismissal. Justice McKinnon would take judicial notice of the District Court's response to Buckles' petition. Dissent, ¶ 30. However, we dismissed Buckles' petition without ever considering the merits of either the petition itself, or the responses to the petition that were filed by Continental and the District Court. We did so specifically because we concluded that "Buckles has an adequate remedy of appeal if Buckles chooses to request certification [of the District Court's Order granting Continental's motion to dismiss] pursuant to Mont. R. Civ. P. 54(b)." Buckles followed our direction, sought and obtained Rule 54(b) certification, and then appealed the District Court's Order dismissing Continental from the action. That Order is what is now before us on appeal. Assuming it would be appropriate to take judicial notice of a pleading that is neither part of the record, nor was ever considered in the writ action, it creates a procedural entanglement, to say the least, to dismiss Buckles' petition on the basis that she has an adequate remedy of appeal but then, having sought that remedy per our direction, to consider the District Court's response to Buckles' dismissed petition in augmentation of the Order that is the actual subject of the appeal.

¶27 Even if it was appropriate to consider the District Court's response to Buckles' petition, however, our disposition of this appeal would remain unchanged. As previously noted, Continental's argument regarding specific personal jurisdiction focuses on whether or not it specifically directed or controlled Zachary's tank gauging activities on the day of

13

his death. However, there are disputed issues of fact as to whether Continental's oversight of the wells at issue—which it acknowledges was conducted from its Sidney office—contributed to the operation of "an inherently dangerous and unsafe well site" as alleged by Buckles. Likewise, there are disputed issues of fact as to whether Continental may be held liable vis-à-vis it contracts with its Montana Co-Defendants. *Cunnington*, ¶ 23.

¶28 We have previously held that "[w]here material jurisdictional facts are disputed, the appropriate procedure is a preliminary hearing by the District Court pursuant to Rule 12(d), M. R. Civ. P." *See Minuteman Aviation* v. *Swearingen*, 237 Mont. 207, 212, 772 P.2d 305, 308-09 (1989) (citing *Data Disc*, 557 F.2d at 1285). The current Montana Rules of Civil Procedure provide a presumption in favor of a hearing:

> **Hearing before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7) [12(b)(2) is the defense of lack of personal jurisdiction] – whether made in a pleading or by motion – and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

M. R. Civ. P. 12(i). Although motions to dismiss have the effect of admitting all well-pled allegations in the complaint, the jurisdictional allegations set forth in the Complaint in this case and developed through additional discovery raise disputed issues of fact, which will determine whether Continental is subject to the Court's jurisdiction. We thus conclude that a preliminary evidentiary hearing should be held on the question of whether the District Court has personal jurisdiction over Continental. "Where the district court takes evidence at a preliminary hearing plaintiff must establish the jurisdictional facts by a preponderance of the evidence." *Minuteman Aviation*, 237 Mont.

at 212, 772 P.2d at 309 (citing *Data Disc*, 557 F.2d at 1285).  If necessary, M. R. Civ. P. 12(i) also allows a court to defer ruling on a motion to dismiss until trial.[2]

## CONCLUSION

¶29     We reverse and remand to the District Court with instructions to conduct an evidentiary hearing for the purpose of determining whether Continental is subject to specific personal jurisdiction in Montana.

/S/ JAMES JEREMIAH SHEA

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

---

[2] The Ninth Circuit Court of Appeals discussed jurisdictional fact-finding in detail in *Data Disc*:

> Where the jurisdictional facts are intertwined with the merits, a decision on the jurisdictional issues is dependent on a decision of the merits.  In such a case, the district court could determine its jurisdiction in a plenary pretrial proceeding.  However, it is preferable that this determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits.  Accordingly, where the jurisdictional facts are enmeshed with the merits, the district court may decide that the plaintiff should not be required in a [Fed. R. Civ. P.] 12(d) preliminary proceeding to meet the higher burden of proof which is associated with the presentation of evidence at a hearing, but rather should be required only to establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery materials.  Of course, at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence.

*Data Disc, Inc.*, 557 F.2d at 1285 n.2.

Justice Laurie McKinnon, dissenting.

¶30 The Court states that Buckles' Complaint was dismissed by the District Court "without any substantive analysis," Opinion, ¶ 24, and in a "single paragraph setting forth the procedural history of the case . . . concluded that the motion was being granted '[f]or the reasons argued by Continental.'" Opinion, ¶ 8. The Court does not consider the District Court's Response to a writ of supervisory control filed by Buckles in which the singular issue raised was the court's alleged error in granting Continental's motion to dismiss for lack of personal jurisdiction. We ordered the District Court to respond; the court did—in a seventeen-page Response that set forth its reasons for concluding there was neither general personal jurisdiction nor specific personal jurisdiction over Continental. Following our review of the District Court's Response, we concluded that certification pursuant to M. R. Civ. P. 54(b) would give this Court the ability to conduct an interlocutory review pursuant to M. R. App. P. 6(6). We dismissed Buckles' petition on October 18, 2016, and, as a result, the District Court granted Buckles' request for certification on October 26, 2016. Buckles did not request a hearing in the District Court to develop jurisdictional facts following our dismissal of the petition; Buckles simply asked that the issue of personal jurisdiction be certified to this Court for resolution as an interlocutory appeal. The District Court's rationale, as articulated in its Response to the petition for writ of supervisory control, should be considered in the instant appeal. The rationale supporting the District Court's decision to grant Continental's Motion to Dismiss for lack of personal jurisdiction, as set forth in its Response to Buckles' petition for a writ, is the matter being reviewed on appeal. The Response was thorough,

16

deliberate, and addressed both general and specific personal jurisdiction. Although the court's Response addresses a matter squarely on appeal, and could have been made part of the record simply by placing it in the court file, I would, to the extent necessary, take judicial notice of the District Court's Response pursuant to *In re Marriage of Carter-Scanlon*, 2014 MT 97, ¶ 17, 374 Mont. 434, 322 P.3d 1033.

¶31 Significantly, after Continental filed its motion to dismiss, Buckles received a 90-day extension to conduct jurisdictional discovery. The only "suit-related" documents relevant to specific jurisdiction that were produced were (1) a spreadsheet filled out by a different defendant, and (2) the Master Service Contract between Continental and BH Flowtest, the entity employing Buckles. The Master Service Contract expressly stated that BH Flowtest was neither an employee nor agent of Continental. Lastly, Continental's Area Production Manager, Russell J. Atkins ("Atkins"), also submitted an affidavit representing that Continental does not direct or control the tank gauging contractors; rather, "it is the contractors who direct the tank gauging operations of their respective employees, including the recording of well- and date- specific data on the form spreadsheet." Atkins testified that the employees and operators of the contractors are the ones measuring and recording the data on the spreadsheet. Buckles has failed to produce any evidence controverting Atkins' description of the subcontractor relationships regarding oil production at the Columbus Federal 2-16H where the injury occurred.

¶32 The District Court understood these relationships and stated:

> Continental operates the Columbus Federal 2-16H well site, located near Alexander, North Dakota ("Continental's North Dakota well site"). Continental contracted with BH FlowTest, Inc., a Montana corporation with its principal place of business in Sidney, Montana, which contracted with

Black Rock Testing, Inc. ("Black Rock"), a Montana corporation with its principal place of business in Glasgow, Montana, which contracted with Janson Palmer, d/b/a Black Gold Testing, Inc. ("Black Gold"), a Montana business entity with its principal place of business in Glasgow, Montana, to perform manual test gauging and production monitoring on Continental's North Dakota Well site. Black Gold employed Zachery Scott Buckles ("Buckles"), a Glasgow, Montana, resident or subcontracted with Buckles d/b/a Dozer Well Testing.

(Footnotes omitted). The District Court also understood the injury occurred in North Dakota and explained that "[o]n April 17, 2014, Black Gold dispatched Buckles from his Glasgow, Montana, residence to gauge crude oil production tanks on Continental's North Dakota well site" where Buckles ultimately died. The District Court observed that Continental is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma, and corporate offices in Sidney, Montana.

¶33 After concluding that pursuant to *Daimler* there was no general jurisdiction over Continental, the District Court analyzed whether there was specific jurisdiction over Continental pursuant to each of the subsections of M. R. Civ. P. 4(b)(1)(A)-(C). The court considered relevant jurisprudence: including *Columbia Falls Aluminum Co. v. Hindin/Owen/Engelke, Inc.*, 224 Mont. 202, 728 P.2d 1342 (1986); *Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 796 P.2d 189 (1990); *Tackett v. Duncan*, 2014 MT 253, 376 Mont. 348, 334 P.3d 920; *Cimmaron Corp. v. Smith*, 2003 MT 73, 315 Mont. 1, 67 P.3d 258; and *Larson v. Ford Motor Co.*, No. DV-15-245B (Mont. 18th Jud. Dist. Ct. 2016). The court held that "[t]he claim for relief in this case involves Continental's agreements with BH FlowTest, a Montana entity, to perform work in North Dakota and an accident on Continental's North Dakota well site." Pursuant to M. R. Civ. P. 4(b)(1)(A)—whether the claims arise from "the transaction of any business within Montana,"—the court

18

concluded that the "Continental-BH FlowTest Montana connection is not enough to confer specific jurisdiction without offending due process constraints under *Cimmaron*."

¶34 Next, the District Court considered M. R. Civ. P. 4(b)(1)(B)—whether the claims arise from "the commission of any act resulting in accrual within Montana of a tort action . . . ." The District Court observed that although Buckles alleged in the Complaint that Continental's Sidney field office directed Buckles' activities, Buckles acknowledges that "Continental's connection to Buckles involved contracts from Continental to BHFlowTest to Black Rock to Black Gold to Buckles" and that the record establishes that the injury causing events did not occur in Montana. Citing *Tackett* and *Cimmaron*, the District Court concluded that the series of contracts employing subcontractors does not support specific jurisdiction over Continental.

¶35 Finally, the District Court considered M. R. Civ. P. 4(b)(1)(C)—whether the claims arise from "the ownership, use, or possession of any property, or of any interest therein, situated within Montana." The District Court explained that the claims arise from an accident that occurred in North Dakota and the fact that Continental owns wells in Montana does not "confer[] specific jurisdiction for a claim arising out of an accident occurring on a North Dakota well site."

¶36 The Court distorts our decision in *Minuteman Aviation*, which held that "[w]here material jurisdictional facts are *disputed*, the appropriate procedure is a preliminary hearing by the District Court pursuant to Rule 12(d), M.R.Civ.P." 237 Mont. at 212, 772 P.2d at 308 (citing *Data Disc*, 557 F.2d at 1285) (emphasis added). Here, there were no disputed facts, but rather an absence of any facts establishing suit-related conduct on the

part of Continental, other than a train of contracts with subcontractors and an injury occurring in North Dakota. The District Court understood the requirements for exercising specific jurisdiction based on alleged suit-related conduct by Continental and correctly ruled that specific jurisdiction was lacking.

¶37 M. R. Civ. P. 4(b)(1) requires that Buckles' claim for relief must arise out of an act done "personally, or through an employee or agent" of Continental. The Master Services Agreement establishes that BH Flowtest was neither an employee nor agent of Continental. Accordingly, for Continental to be subject to specific jurisdiction of a Montana court, Buckles' claim must have arisen out of an act done "personally" by Continental, either through its transaction of business in Montana, M. R. Civ. P. 4(b)(1)(A); through the tort action having accrued in Montana, M. R. Civ. P. 4(b)(1)(B); or as a result of the claim arising out of Continental's ownership of Montana property, M. R. Civ. P. 4(b)(1)(C). The United States Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, ___ U.S. at ___, 134 S. Ct. at 1122. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Columbia, S. A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984). Thus, however significant the contacts to Montana of Buckles or other third party subcontractors may be, those contacts cannot be decisive in determining whether

the exercise of jurisdiction over the defendant is proper. *Walden*, ___ U.S. at ___, 134 S. Ct. at 1122.

¶38 Importantly, Buckles does not request an opportunity to conduct further discovery or have a hearing; rather, Buckles argues that the law applied to the undisputed facts establishes specific personal jurisdiction over Continental and that the court erred in finding otherwise. We stated in *Minuteman Aviation* that "where material jurisdictional facts are disputed, the appropriate procedure is a preliminary hearing." 237 Mont. at 212, 772 P.2d at 309. Further, the court, as the District Court did here, "has discretion to permit discovery to resolve factual issues." *Minuteman Aviation*, 237 Mont. at 212, 772 P.2d at 309 (citing *Data Disc*, 557 F.2d at 1285). Regardless of how the jurisdictional facts are produced, the plaintiff must "establish the jurisdictional facts by a preponderance of the evidence." *Minuteman Aviation*, 237 Mont. at 212, 772 P.2d at 309 (citing *Data Disc*, 557 F.2d at 1285). The Court suggests that the instant facts are so intertwined with the merits of the underlying controversy that a decision on the jurisdictional issue may have to wait until a decision can be made on the merits. Opinion, ¶ 28, n.2. However, *Minuteman Aviation* did not authorize an approach that requires a defendant to defend a proceeding in a foreign state and wait until a decision is made on the merits before its motion to dismiss for lack of jurisdiction is granted. Further, in my opinion, it is inappropriate for this Court to set forth a new rule such as this in a footnote, as it has done.

¶39 *Minuteman Aviation* held that "[i]n a situation where the jurisdictional facts are intertwined with facts involving the merits of the case, the district court may determine

21

its jurisdiction in a plenary *pretrial* proceeding." 237 Mont. at 212, 772 P.2d at 309 (citation omitted) (emphasis added). Here, Buckles has failed to make even a prima facie showing of jurisdictional facts which, based upon a preponderance of the evidence, is sufficient to confer jurisdiction over Continental. This is so even after an extension of discovery in order to do so. The Court's conclusion *ipso facto* that facts are in dispute does not make it so. The *uncontroverted* evidence of the Master Service Agreement and Atkins' affidavit establish that the subcontractors directed the tank gauging operations of their respective employees. The instant facts are easily distinguishable from those present in *Minuteman Aviation*, which involved the repair of an aircraft engine in one state; installation of the engine in another state; and the accident occurring in Montana. 237 Mont. at 208, 772 P.2d at 306. The instant facts are also easily distinguished from *Data Disc*, which involved an alleged breach of contract and questions of where the contracts were negotiated and executed. 557 F.2d at 1283-84.

¶40    Accordingly, even without consideration of the District Court's Response, Buckles has not met her burden of proof to demonstrate Continental's suit-related conduct arose from its transaction of business in Montana. To the extent we are unhappy with the absence of any underlying jurisdictional facts and seek to facilitate a second fishing expedition to develop those facts, I dissent.

/S/ LAURIE McKINNON